LUCAS HICKS

*v.*

H. E. SILLIMAN *et al.*

1. SURFACE WATERS—*rights of servient and dominant heritages.* While it is proper for the owner of land to use and cultivate it according to the ordinary modes of good husbandry, although by doing so it may interfere with the natural flow of surface water in passing over his own land, so as to increase

or diminish the amount that would otherwise reach the land of an adjacent proprietor, and thereby cause him an injury for which the law gives no redress, yet such owner has no right, by the construction of ditches and embankments or other artificial structures, to collect together the surface water from his own land, or from those of other persons, and precipitate them in undue and unnatural quantities upon the land of his neighbor, and if he attempts to do so, a court of equity will interpose to prevent the act.[*]

2. INJUNCTION—*to prevent improper diversion of surface waters.* The remedy by injunction in such cases is clearly established.

3. EVIDENCE—*inferences from facts proven.* When certain facts are admitted or proved, the court trying the case will take notice, without further proof, of all such presumptions and inferences arising from them as are warranted by uniform experience, and also of all such consequences as are known to flow from the laws which govern matter and which are applicable to the proven or admitted facts, and in drawing such conclusions the court may also avail of matters of science.

4. So, where it is shown that land of one person slopes toward an adjacent tract belonging to another, and the owner of the dominant heritage is threatening by artificial means to gather the surface waters from his own and other contiguous lands in large quantities, and by means of ditches and embankments is preparing to conduct it to a point on his own land near the servient heritage, and there permit them to escape, it does not require the opinions of witnesses to establish the conclusion that if the surface water is permitted to be thus collected and discharged, it will certainly flow upon the servient heritage in unnatural and undue quantities.

5. And in such case, where it further appears that the land upon which this undue proportion of surface water is about to be thrown is so unusually low and wet that it is barely susceptible of cultivation, and without any drainage whatever, the court would be fully warranted, without further testimony, in reaching the conclusion that the land would be thereby injured, and the owner entitled to protection from such a result.

6. PLEADING AND EVIDENCE—*variance.* Where a part only of the allegations are proved, and the part thus proved shows a right of action, the plaintiff will be entitled to recover *pro tanto,* and this rule obtains both at law and in equity. It is only where the allegation is descriptive of the cause of action, and is not severable, that a variance is fatal. It is not necessary that a complainant should prove the injury, or threatened injury, to the full extent charged, but it is sufficient if he proves enough to entitle him to the relief sought.

[*] See also, on this subject, *Toledo, Wabash and Western Railway Co.* v. *Morrison,* 71 Ill. 616; *Gormley* v. *Sanford,* 52 id. 158; *Alton and Upper Alton Horse Railway, etc. Co.* v. *Deitz,* 50 id. 210; *Gillham* v. *Madison County Railroad Co.* 49 id. 484.

7. So, where, upon bill in chancery to restrain the defendant from diverting surface water which had gathered in a pond so as to precipitate the same upon complainant's land, it was alleged the defendant was attempting and intending to drain *all* the water from the pond upon complainant's land, and the proof showed that the means employed by the defendant would prevent a portion of the water from the pond being discharged in the manner alleged, this was held to be no such variance as would defeat the remedy as to so much of the injury as was actually threatened.

APPEAL from the Appellate Court of the Second District; the Hon. NATHANIEL J. PILLSBURY, presiding Justice, and the Hon. JOSEPH SIBLEY and Hon. E. S. LELAND, Justices.

This was a bill for an injunction, filed by H. E. Silliman, E. H. Preston, Hiram Reed, John Cutler, Mary R. Webster, John Sturm and Wallace Sturm, in the Peoria county circuit court, against Lucas Hicks, on the 3d day of October, 1877.

The object of the bill was to perpetually enjoin the defendant from completing certain ditches and embankments which he was then engaged in constructing on his own lands, on the alleged ground that when completed they would have. the effect of diverting the natural flow of the surface waters on his own lands, and thereby throw them together with other accumulations of water in increased and unnatural quantities upon the lands of the complainants. In other words, it was a bill to prevent a threatened nuisance.

The bill charges, in substance, that complainants are citizens of Peoria county, and land owners in Medina township, being town 10 north, range 8 east. That Silliman is part owner, and is in possession with his mother, of 90 acres off the north side of the south-west of section 3; said Preston is owner of part of the south-east and south-west quarters of section 3; said Reed is owner of part of the south-west section 3, and part of the north-east quarter and part of the northwest quarter of section 10, being 53 acres; said Webster is the owner and in possession of 80 acres, part of the north half of section 10; John Sturm is the owner and in possession of 80 acres, part of the north half of section 10, and 240

17—93 ILL.

acres south half section 10; and said Wallace Sturm is the
owner and in possession of the north half of the south-east
quarter of section 10. That they have been in possession of said
lands many years, and live upon and cultivate the same; val-
uable improvements are thereon; the same are used as home-
steads by the said several parties; that they are susceptible of
cultivation or for grazing, and are valuable and productive.
That one Lucas Hicks is owner and in possession of the south-
east quarter of section 34, town 11 north, 8 east, fourth prin-
cipal meridian, in said county; also of the north-east quarter
section 3, 10 north, 8 east; that for many years there has
been a large pond of water constantly standing on the first
named tract, owned by said Hicks, covering about 100 acres;
such pond or lake was upon said land at the time said Hicks
became the purchaser thereof, and for many years before;
that it was a natural reservoir and receptacle for the water
flowing through what is known as Hallock creek, flowing
therein near the north end thereof. Said pond in dry seasons
is not less than four feet deep, and in high water is of greater
depth, and has for many years been the drainage for that part
of the country; that said pond, when left to seek its natural
outlet for surplus water, never has been of any permanent or
material injury to the complainants. The bill shows that said
Hicks has been at work for some time past, as secretly as possi-
ble, attempting to create an outlet for said pond and complete
drainage upon and over the land of the complainants; that
for some time he has been at work throwing up an embank-
ment along the whole east side of said pond, thereby making
a channel for said stream, that has hitherto emptied into the
north end of the pond along the side of said pond to the north
side of the tract of land described as belonging to him, and
he has now employed a large number of men and teams,
and is digging in a southerly direction across the said
south-east of 34, owned by him, as a further channel for said
stream, and as an outlet for said pond, thereby attempting and
intending to drain all the water from said creek and pond upon

complainants' land, which lies in a southerly and southwest-
erly direction; that if he is allowed to go on with said work
and finish such ditch all the water that formerly emptied into
said pond will flow upon complainants' land, and said pond will
be drained upon their land, and his land will be redeemed and
become tillable at complainants' expense; that if said water is
drained upon their land it will work irreparable injury, cover
their land with water and ruin it beyond redemption, totally
destroying it for farming purposes; that when he bought such
land he bought said pond, which has been at the same place
ever since the country was settled, and would so remain with-
out injury to complainants had he not illegally and with intent
to permanently injure beyond repair their property, turned
the water from its natural course, and attempted to deepen
the channel and perfectly drain said pond; that he, well know-
ing the illegal and wrongful character of such work, is now
working a large force of men and teams, digging such ditch,
and draining said pond, and conducting said water upon com-
plainants' land, and will accomplish his design and run all the
water that has hitherto stood in said pond upon complainants'
land, and destroy the same for farming or residence purposes;
that he is threatening to complete the same as speedily as
possible, as he fears he will be interfered with by order of
court, as complainants are informed.   They say, and will
prove, that if he is not restrained he will work such injury to
complainants and their land as can not be repaired in money
damages, as it will destroy the homes they have with labor,
care and money made for themselves.   They pray for sum-
mons, and answer not under oath, and for injunction against
further prosecuting said work, or in any way draining said
pond so as to run upon complainants' land, or from turning
Hallock creek upon complainants' land, and from doing any-
thing whereby the contents of said pond can be made to run
upon their land, and from diverting the usual and natural
flow of said creek, or pond, or any other creek or pond in
that vicinity; and for other relief.

The answer to the bill by defendant admitted that he was engaged in constructing the ditches and embankments as charged, but denied that their construction would have the effect claimed.

There was a general replication to the answer, and the cause was heard at the May term, 1878, resulting in a decree against defendant as prayed for in complainants' bill, which, on appeal to the Appellate Court of the First District, was affirmed.

Appellant brings the record to this court, and assigns for error the affirmance of the decree of the circuit court.

Mr. NEWTON B. REED, and Messrs. CRATTY BROS. for the appellant.

Messrs. STEVENS, LEE & GALLAGHER, for the appellees.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

A vast amount of testimony has been taken on both sides of this case, and the record is consequently quite voluminous. Nevertheless we have, in view of its unquestioned importance, endeavored to arrive at a clear understanding of the facts. With respect to the evidence, it is to be remarked that there is really but little conflict to be found in it, except as to matters of mere opinion, about which honest men of equal intelligence might reasonably be expected to differ.

As to the salient facts in the case, and upon which the rights of the parties must in the main depend, the evidence is entirely harmonious. The ownership of the several pieces of land mentioned in the bill; their location with respect to each other; the topography of these lands and surrounding locality, the existence and locality of the pond or slough upon defendant's land; the fact that it was and has been for many years a natural receptacle and reservoir for surface water, and occasionally, also, for the waters of Hallock creek and other small streams; the fact that appellant was constructing the ditches and embankments in the manner, and for the purpose charged in the bill; and finally, the fact that

the waters to be thus collected together were to be thrown upon the lands of appellees, are substantially admitted by the pleadings, and shown by the conclusive and concurrent testimony of all the witnesses, including appellant himself.

With these facts admitted, it does not require the opinions of witnesses to enable the court to see that such an injury was about to be inflicted upon appellees as equity would interpose to prevent. When certain facts are admitted or proven, the court takes notice, without further proof, of all such presumptions and inferences arising from them as are warranted by uniform experience, and also all such consequences as are known to flow from the laws which govern matter, and which are applicable to the proven or admitted facts. For instance, when it is shown that the roof of a house, without gutters or other obstructions, is sloping and projects over an adjoining building, the court may well conclude that the drip in time of rains will fall on such adjacent building. And the opinion of any number of witnesses to that effect would scarcely strengthen the conclusion. So, where it is shown that land of one person slopes toward an adjacent tract belonging to another, and the owner of the former is threatening by artificial means to gather the surface water from his own and other contiguous lands in large quantities, and by means of ditches is preparing to conduct it to a point on his own land near the adjacent land, towards which his own slopes, and there permit it to escape, it does not require the opinions of witnesses to establish the conclusion that if the surface water is permitted to be thus collected and discharged, it would certainly flow upon such adjacent land in unnatural and undue quantities. And in such case, where it further appears that the land upon which this undue proportion of surface water is about to be thrown is so unusually low and wet that it is barely susceptible of cultivation, and without any drainage whatever, the court would be fully warranted, without further testimony, in reaching the conclusion that the land would be thereby injured, and the owner entitled to redress.

It is the right and duty of courts, in determining what conclusions or results may be fairly drawn from testimony, to avail themselves not only of their knowledge and experience in the practical affairs of life, but also of matters of science. A knowledge of physics is often indispensable in determining what inferences shall be drawn from an existing state of things. The laws of gravitation, hydraulics and mechanics are of constant application in judicial inquiries; and some of them may be usefully applied here.

It is urged by appellant, that without these structures all the surplus water would° be carried upon appellees' lands any way, and that with the structures nothing more than the surplus water could reach them. The argument is specious and the position untenable.

It clearly appears from the evidence, that the slough upon appellant's land becomes substantially dry every season, and that in case of freshets or sudden heavy rains, it is fed, outside of surface water, mainly by Hallock's creek; and the conceded effect of the embankment on the east and south sides of the slough is to confine all the waters supplied by Hallock's creek to the east and south sides of the slough, when, but for the embankment, they would be equally distributed all over it. Without these structures, when the slough was already dry, or nearly so, it would take a vast amount of rain before it would overflow at all, and until such overflow none of this water would ever reach complainants' lands; whereas, by confining it within a comparatively small compass, it would, by means of the ditch, force its way southward and be precipitated at once upon appellees' lands. By this means, doubtless large quantities of water would often be thrown upon appellees' lands that would otherwise be confined within the slough until it would be absorbed in the earth and pass off by evaporation.

The consequences here suggested are not speculative at all. They are the necessary results of known physical laws.

But outside of these considerations, when we view the case in the light of the opinions of witnesses who were familiar with the lands involved, the structures being made, and the slough and its surroundings, we see nothing to change the convictions forced upon us by the admitted and clearly established facts as heretofore stated. The decided weight of opinion upon the merits is unquestionably with appellees.

It is claimed by appellant's counsel, there is a fatal variance between the allegations in the bill and the proofs, in this: that it is charged in the bill that appellant was attempting and intending to drain *all* the water off the creek and pond upon complainants' land, when the proofs show that so much of the pond as lies north and west of the embankment are effectually prevented from overflowing complainants' lands.

This is sustantially true, but there is nothing in the objection. Conceding it to be a variance at all, it is not that character of variance that is fatal to a recovery.

The variance here complained of consists in the fact that complainants did not prove the injury to the full extent charged. There is no rule of law requiring this to be done. Where a part only of the allegations are proved, and the part thus proved shows a right of action, the plaintiff will be entitled to recover *pro tanto*, and this rule obtains both at law and in equity. It is only when the allegation is descriptive of the cause of action, and is not severable, that a variance is fatal. For instance, in the ordinary case of the foreclosure of a mortgage, it is charged in the bill that the mortgage was given to secure two separate notes, describing them, and that they are both due and unpaid, and the proofs show that one of the notes, before the filing of the bill, was fully paid. In such case there could be no question of the complainants' right to a foreclosure as to the note not paid, yet the case supposed is in principle like the one before us.

The thing which appellant was engaged in doing and threatening to consummate was a tort or wrong, and it is a familiar doctrine of law that torts are severable, and that it is

only necessary to prove so much of the wrong charged as constitutes a cause of action, to entitle the plaintiff to a recovery. We repeat, there is nothing in the objection. While the owner of land may use it as he pleases for habitation and other lawful purposes, yet his right in this respect is subject to the qualification that he must so use it as to not inflict an injury upon his neighbor.

By the term injury here we have no reference to those slight inconveniences that often occur by the ordinary and legitimate use of land, but we have reference to those palpable and substantial injuries which are not sanctioned by usage and do not result from the ordinary use and enjoyment of one's own property. So, while it is perfectly proper for the owner of land to use and cultivate it according to the ordinary methods of good husbandry, although by doing so it may interfere with the natural flow of surface water in passing over his own land, so as to increase or diminish the amount that would otherwise reach the land of an adjacent proprietor and thereby cause him an injury for which the law would afford no redress, yet such owner has no right, by the construction of ditches and embankments or other artificial structures of a similar character, to collect together the surface waters from his own lands or those of other persons, and precipitate them in undue and unnatural quantities upon the lands of his neighbor to his injury.

The remedy by injunction in cases of this character is clearly established. Indeed, it is not seriously questioned in this case. To have permitted appellant to complete the structures in question would have resulted in irreparable injury to appellees, affecting alike their health, homes and lands. It was a threatened injury of the gravest character, and therefore strongly demanded the interposition of a court of equity.

The decree of the circuit court was right and should have been, as it was, affirmed by the Appellate Court.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*