ANDREW GRAHAM *et al.*

*v.*

GEORGE M. KEENE.

*Filed at Ottawa October 31, 1892.*

1.  DRAINAGE—*from a highway—over private land—changing natural course of surface water.* The right to drain upon and over lower or servient lands without making compensation for such privilege, is the same whether the dominant land is the farm of an individual owner or is a public highway. To hold otherwise would be to disregard the constitutional inhibition against taking or damaging private property for public use without making just compensation. In this State the same rule is applied to surface water flowing in a natural and regular channel that is applied to water-courses.

2.  The commissioners of highways have a right to have the surface water falling or coming naturally upon the highway, pass off the same through the natural and usual channel or outlet upon and over the lower lands, and they have the right to construct ditches or drains for the purpose of conducting such surface water, and water in a pond in the highway, into such natural and usual channel or outlet, even if the water thus carried upon such lower lands is thereby increased.

3.  SAME—*diverting course of water on land of another.* The commissioners of highways have no right, by the construction of a ditch in the road through a ridge or elevation, to drain and carry and divert the surface water from its natural outlet, and upon the land of an adjoining owner, by a route different than the natural outlet, and thus cast a greater burden on such land than it would otherwise sustain.

4.  The owner of the higher land is not authorized by law to dig through or remove natural barriers, and thereby let flow onto adjoining and lower lands water that would not otherwise naturally pass in that direction.

5.  SAME—*when injunction lies to prevent threatened injury.* Where it is reasonably certain, from the evidence, that the proposed act of the proprietor of the higher land will cause a substantial and irreparable injury to the private rights of the owner of the lower land, by creating a private nuisance on his premises, a court of equity will afford relief by decreeing an injunction.

6.  SAME—*right of commissioners of highways to drain pond in road, over land of another.* In constructing a road over a pond, which was west of a ridge in the ground, the commissioners of highways scraped dirt from one side of the road along and over such ridge, and private

persons also used the earth from the same place. The natural passage of the water from the pond and road west of the ridge was permitted to become obstructed and out of repair, so that in times of extreme high water it was dammed up and forced to run east along the ditch over the ridge, where it spread over the land of a private person, and this occurred for ten or twelve years: *Held,* that such owner was not estopped, by his acquiescence for the period named, from preventing the commissioners from deepening the ditch across such ridge a foot or eighteen inches more, so as to drain the road and pond over his land lying east of such ridge.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of DeKalb county; the Hon. CHARLES KELLUM, Judge, presiding.

Mr. HARVEY A. JONES, for the plaintiffs in error:

The commissioners of highways shall have charge of the roads and bridges of their respective towns, and it shall be their duty to keep the same in repair, etc. Rev. Stat. sec. 2, chap. 121.

Principles governing farm drainage control road drainage. A grant of a right of way for a road includes a grant of a right to drain a road. *Peck* v. *Herrington,* 109 Ill. 611; *Comrs. of Highways* v. *Whitsit,* 15 Ill. App. 318; *Palmer* v. *O'Donnell,* 15 id. 324.

The right of drainage is the same whether applied to farms or highways. *Comrs. of Highways* v. *Whitsit,* 15 Ill. App. 318.

Commissioners of highways can invoke the aid of the Eminent Domain act to the same, and no further, extent than others. Rev. Stat. chap. 121, sec. 8; *Nevins* v. *Peoria,* 41 Ill. 502.

Mr. L. LOWELL, and Messrs. CARNES & DUNTON, for the defendant in error:

Where adjacent lands, owned by different proprietors, are upon a common level, there being no natural drainage from one to the other by a surface channel, then the land of neither proprietor will occupy the position of a servient heritage; and

if an artificial channel should be dug upon one of the lots by the occupant thereof, for his own convenience, by means of which the surface water from the adjacent lot was being carried away, a subsequent owner of the former lot would have the right, not only to fill such artificial channel, but to raise his lot above its natural level, if by so doing he does not turn the surface water of his own lot upon that of the adjacent proprietor. *Gormley* v. *Sanford,* 52 Ill. 158.

A license to open a ditch for the passage of water may be revoked at pleasure, if not under seal. 1 Addison on Torts, 130.

It may be regarded as a well settled rule, that the owner of an upper field can not construct drains or ditches so as to create new channels for water in the lower field, but may make such drains on his own land as may be required by good husbandry, although by so doing the flow of water may be increased in a regular, well-defined channel, which carries the water from the upper to the lower field. *Peck* v. *Herrington,* 109 Ill. 611.

Nor has the owner of the upper ground a right to make any excavations or drains by which the flow of water is directed from its natural channel, and a new channel made on the lower grounds; nor can he collect into one channel water usually flowing off into his neighbor's field by several channels, and thus increase the wash upon the lower fields. *Gillham* v. *Railroad Co.* 49 Ill. 484.

In *Livingston* v. *McDonald*, 21 Iowa, 160, it was said: "If the ditch increased the quantity of water upon the plaintiff's land, to his injury, or, without increasing the quantity, threw it upon the plaintiff's land in a different manner from what the same would naturally have flowed upon it, to his injury, the defendant was liable for the damage thus occasioned, even though the ditch was constructed by the defendant in the ordinary use and improvement of his farm."

The owner has no right, by the construction of ditches and embankments, or other artificial structures of a similar character, to collect together the surface waters from his own lands, or those of other persons, and precipitate them in undue and unnatural quantities upon the lands of another, to his injury. The remedy by injunction in cases of this character is clearly established. *Hicks* v. *Silliman*, 93 Ill. 255.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The appellee, George M. Keene, is the owner of a farm consisting of two quarter-sections of land, one of said quarter-sections lying north of a public highway which runs east and west, and the other lying south of said highway, and the west line of said farm is coincident with the west lines of the two sections in which said quarter-sections are respectively located. In this highway, and about seven or eight rods west of the west line of the premises of appellee, is a pond or sag-hole, and some years ago a roadway was thrown up or "piked up" through this pond, the principal part of the pond being to the north of the thrown-up road, and a sluice was made through the embankment to allow the water to escape to the south, but the sluice was at times insufficient in size to carry the volume of accumulated water, and has been allowed to get out of repair and become obstructed.

There are in that locality two small valleys lying side by side, and separated by a narrow strip or ridge of high ground. Both valleys slope to the south or south-east, and both drain into a ravine or swale that crosses their southern extremities. The highway crosses these two valleys from twenty-five to thirty-five rods north of the ravine. The pond above mentioned is in the west valley, and is formed by surface water. The natural flow and drainage of the surface water from the land north of the highway and west of the north half of the farm of appellee is into this pond, and the natural flow and

·drainage from the pond, and from that portion of the highway that lies west of the west line of the premises of appellee, is through the west valley, first in a southerly and then in an ·easterly direction, first flowing upon the tract of land immedi-ately west of the south half of appellee's farm, and then flow-ing upon appellee's land and into the ravine or swale above mentioned.    The east valley runs through the lands of appel-lee, and where the highway crosses it, and about twenty-five rods east of the pond, there is also a sluice-way for water.

The original and natural elevation of the ridge between the two sluice-ways was some three feet above the surface of the valleys on either side, but from time to time, for many years past, earth has been excavated on the north side of the high-way for constructing the thrown-up road and for repairing the highway, and by various individuals for their own private purposes.    The result is, the sluice-way at the pond being ·small and partially obstructed and filled up, that in times of high water, and for a number of years, the water from the pond has to some extent flowed through said excavation in the ridge, and through the east sluice-way, and upon the land of ·appellee.    A further excavation of a foot or eighteen inches would permit the water to flow freely from the pond and from the western valley to the eastern valley and sluice-way, and substantially drain the pond.    The commissioners of highways of the town of Victor who are plaintiffs in error herein, made arrangements to further excavate through the ridge, and make such a ditch along the north side of the highway as would con-duct all the waters of the west valley, and of the pond north of the highway, through the east sluice-way, and discharge them upon the premises of appellee.    The place of the dis-·charge of such waters would be in a plowed and cultivated field, and in a basin, where the water would have to stand on the land to a depth of twelve or fourteen inches before it would begin to flow away.    The burden of water already imposed on said field by the east sluice, and otherwise, is already so great

as that it is with difficulty susceptible of cultivation, and the proposed additional discharge of water thereon would render it unavailable for the purposes of tillage. The road on each side of and through the pond or sag-hole is a good one, and there exists no necessity for the construction of the proposed ditch for the purpose of improving or repairing the highway.

The above are the substantial facts of this case, briefly stated, as they are alleged in the bill for an injunction that was filed by appellee for the purpose of restraining the highway commissioners and their employes from excavating and opening the proposed ditch or drain along the north side of the highway and through the ridge or elevation near the west line of appellee's farm, and as they were reported by the master in chancery in his findings of fact, and as they were found, at the hearing, in the decree of the circuit court, and by the Appellate Court upon the appeal to that court; and the facts thus stated are, in our opinion, amply established by the evidence in the record.

The right to drain upon and over lower or servient lands without making compensation for such privilege, is the same whether the dominant land is the farm of an individual owner or is a public highway. To hold otherwise would be to disregard the constitutional inhibition against taking or damaging private property for public use without making just compensation. In this State the same rule is applied to surface water flowing in a natural and regular channel that is applied to a running stream or water-course. The public, represented here by the highway commissioners, have a right to have the surface water falling or coming naturally upon the highway, pass off the same through the natural and usual channel or outlet upon and over the lower lands lying north and east of the pond in question, and have the right to construct ditches or drains for the purpose of conducting said surface water, and the water in the pond on said highway, into said natural and usual channel or outlet, even if the water thus carried

upon said lower lands is thereby increased. (*Peck* v. *Herrington*, 109 Ill. 611.) As we have already seen, the natural outlet for the surface water from that portion of the highway that lies west of the section line and west of the elevation or ridge above mentioned, and from the land immediately adjoining it on the north, and of the surface water contained in the pond, is through the tract of land directly south of the pond, and thence in an easterly direction into a ravine or swale on the land of appellee. As between said portion of the highway and that part of the land of appellee that lies in the west valley, and through which the water naturally flows to the ravine or swale, the relation of dominant estate and servient estate exists.

But, as we understand the pleadings and the proof, the land in that portion of the south quarter-section of appellee's farm that adjoins the highway east of the section line, and upon which his cultivated field is situated, can not justly be considered as servient to the land in the highway that lies in a different section, and from which it is separated by an elevation or ridge, which, in the state of nature, was several feet higher than the surface of the soil on either side, and over which it was impossible that water could flow. The place in the field where the water from the proposed ditch would be discharged is a sort of basin, and there is no natural outlet or channel from it, and from its location, and by means of the east sluiceway, it is already burdened with the surface water from that portion of the highway that is east of the ridge and from seven or eight acres of land that lie north of that part of the road, and to now divert the surface water west of the ridge from its natural channel, and drain the pond by the proposed ditch and by a route other than its natural outlet, would be to impose upon said field a still greater burden by casting upon it this additional and foreign water. This the highway commissioners have no lawful right to do. The owner of the higher land is not authorized by the law to dig through or remove natural

barriers, and thereby let onto adjoining lower lands water that would not otherwise naturally flow in that direction. ' *Nevins* v. *City of Peoria,* 41 Ill. 502; *Gillham* v. *Madison County Railroad Co.* 49 id. 484; *Jacksonville, Northwestern and Southeastern Railroad Co.* v. *Cox,* 91 id. 500; *Peck* v. *Herrington,* 109 id. 611; *Totel* v. *Bonnefoy,* 123 id. 653. And in such case, and where it is reasonably certain, from the evidence, that the proposed act of the proprietor of the higher land will cause a substantial and irreparable injury to the private rights of the owner of lower land by creating a private nuisance on his premises, a court of equity will afford relief by decreeing an injunction. *Hicks* v. *Silliman,* 93 Ill. 255; *Thornton* v. *Roll,* 118 id. 350; *Anderson* v. *Henderson,* 124 id. 164; *Hotz* v. *Hoyt,* 135 id. 388.

It is urged that the case last cited (*Hotz* v. *Hoyt*) is on all fours with the case at bar, and conclusively settles it adversely to appellee. We do not so understand that case. Here, the effect of the proposed ditch would be to conduct the water from the pond into a sink or basin in the tilled field of appellee, and the practical result would be to transfer the pond from its present location in the highway to said field. There the proposed ditch would have discharged its waters into the Hoffman branch, and the decision was based upon the ground that the evidence did not satisfactorily show that the work contemplated by the highway commissioners would have materially changed the flow of the water, to the injury of the appellee.

It appears that the road through the pond was constructed some fifteen or seventeen years prior to the hearing of this cause; that the earth used for the purpose of making it was scraped from the ridge east of the pond and on the north side of the highway; that there was a sluice-way through the road so made; that earth was, from time to time, thereafter taken from said north side of the highway for the purpose of repairing and working the road, and earth, from time to time, taken therefrom by private persons for purposes of their own; that

the sluice-way through the road was too small to thoroughly and expeditiously accomplish the drainage for which it was intended; that it was permitted to become obstructed and out of repair, and that the result has been that for some ten or twelve years past the waters that in times of high water have accumulated in the pond have backed up, and have been forced to run east on the north side of the road, through the ditch or depression made by the removals of earth therefrom, and to find an outlet through the east sluice-way, on the plowed land of appellee. The excavations of earth that were made on said ridge were not made or intended for the purpose of draining the pond, or the land, or the highway west of the ridge. It is manifest that no right, by prescription, to drain the surface water from said land and highway on to the cultivated field of appellee that lies immediately south of the east sluice-way, is shown by the evidence. Nor does the fact that appellee and his grantors have for ten or twelve years permitted, without objection, the limited amount of surplus water that has in times of extreme high water accumulated in the pond, to flow through the excavation or ditch that has gradually been made across the ridge and into the field in question, estop appellee from now claiming that he shall not be further injured by the removal of a foot or eighteen inches more of earth from the excavation on the ridge, and by the precipitation upon said field of all the water contained in said pond, and all the sur- face water of the highway and the adjoining lands that natur- ally flow to said pond, and through it to the land that lies immediately south of the pond. It may be that to lessen the number of sluice-ways across the highway would improve the road and be less expensive, but the public have no lawful right to obtain these benefits by doing an injury to the vested prop- erty rights of appellee, without making just compensation.

We find no error in the record. The judgment of the Appel- late Court is affirmed.

*Judgment affirmed.*