JAMES C. BURKE *et al.*

*v.*

THE SANITARY DISTRICT OF CHICAGO.

*Filed at Ottawa June 11, 1894.*

1. CONDEMNATION—*plans of proposed work, when not material.* Where, in a proceeding to condemn lands for a drainage canal, the question tried is, not the right of the petitioner to condemn the property, but only the amount of the just compensation to which the land owner is entitled, plans and specifications of the work proposed need not be produced.

2. SAME—*question of excessive condemnation, how raised.* Where a respondent in a petition to condemn claims that the amount of land sought to be condemned is excessive, and that plans and specifications of the work, more full than those produced, would show that fact, he should raise these questions specifically in the trial

court, and, failing to do so, will be taken to have acquiesced both in the sufficiency of the plans produced and in the condemnation of the entire tract.    This case distinguished from *Tedens* v. *Sanitary District*, 149 Ill. 87.

3. SAME—*capability of improvement as affecting value.*   In a trial to ascertain the just compensation for lands which are subject to overflow, the value of such lands, as enhanced by their capability of improvement, by the erection of dikes thereon,—which dikes, if constructed, would have the effect to wrongfully overflow the lands of neighboring riparian owners,—is not proper for the consideration of the jury in assessing the owner's compensation, and instructions which so tell the jury are not erroneous.

4. RIPARIAN RIGHTS—*riparian owner must accept burdens as well as benefits.*   Each proprietor of land upon a natural water-course is entitled to have the water flow undeflected to him so far as it is a benefit, and is also bound to receive it undiminished so far as it is a nuisance.   He has no right to improve his lands by erecting dikes for their protection against ordinary floods, in such manner as to flood the lands of others which would otherwise be exempt from overflow.

5. INSTRUCTIONS—*substance given in others.*   It is not error to refuse instructions embodying propositions of law which are substantially given in other instructions in the case.

6. SAME—*apply, in condemnation, to cases severally.*   An instruction given for petitioner, that "the placing of dikes about the lands of respondents, *or either of them*," would not be lawful if such dikes would cause the overflow of the lands of another, etc., is not erroneous, even though the cases of other respondents besides appellants were being tried with theirs.   Such trials are, in legal effect, several, and the jury would consider the instruction as applying, severally, to each tract of land and each land owner.

7. SAME—*when basis of, in evidence, should be shown.*   It is not error to refuse an instruction which is not based upon the evidence, and where a record is voluminous the court will not assume the labor of searching for evidence on which a refused instruction is said to be based, where the counsel urging the exception fails to point it out, after its existence has been denied by opposing counsel.

APPEAL from the Circuit Court of Cook county ; the Hon. R. S. TUTHILL, Judge, presiding.

Mr. R. S. THOMPSON, for the appellants :

The question whether the uses and purposes for which property of a private citizen is sought to be condemned fall within the legislative grant of power to the

corporation seeking such condemnation, is a proper subject for judicial determination, and courts are clothed with ample power to prevent any abuses of the rights of a citizen. *Railroad Co.* v. *Wiltse,* 116 Ill. 449; *Marsh* v. *Chestnut,* 14 id. 225; *Mitchell* v. *Railroad and Coal Co.* 68 id. 288.

An owner of land has the legal right to protect his property from overflow in certain cases, and the trial court erred in the rulings and instructions on this subject. *McDaniels* v. *Cummings,* 83 Cal. 515; *Peck* v. *Herrington,* 109 Ill. 611; *Ridge* v. *Railroad Co.* 53 Just. P. 55; *Goodale* v. *Tuttle,* 29 N. Y. 459.

Injunction will not lie to prevent the owner of land from constructing a dike to protect his land from overflow. *Laney* v. *Jasper,* 39 Ill. 46; 2 Story's Eq. Jur. secs. 238, 239; Adam's Eq. Pl. 211 (note); 2 Hilliard on Torts, 92, 93; High on Injunctions, 807; *Phelps* v. *Foster,* 18 Ill. 309; *McCord* v. *Dixon,* 12 Ohio, 387; *Earl of Ripon* v. *Hobert,* 3 M. & K. 169; *Mohawk* v. *Utica,* 6 Paige, 554; *Haines* v. *Taylor,* 2 Phillips, 209; *Adams* v. *Michael,* 38 Md. 123; *Vail* v. *Mix,* 74 Ill. 127; *Dunning* v. *Aurora,* 40 id. 481; *Attorney General* v. *Nichol,* 16 Ves. 338.

Mr. JOHN P. WILSON, and Mr. ORRIN N. CARTER, for the appellee:

It is a well settled rule of law that one property owner has no right to construct embankments which, in times of ordinary flood, will divert the water of a stream from its natural course and throw it upon the property of another. Angell on Water-courses, sec. 334; Gould on Waters, sec. 160; *Gerrish* v. *Clough,* 48 N. H. 9.

This principle has been repeatedly upheld in this State. *Railway Co.* v. *Elliott,* 34 Ill. App. 589; *Railway Co* v. *Singleton,* 34 id. 425; *Railway Co.* v. *Thillman,* 143 Ill. 127; *Railway Co.* v. *Wachter,* 123 id. 440; *Hicks* v. *Silliman,* 93 id. 255; *Dayton* v. *Drainage Comrs.* 128 id. 271; *Young* v. *Comrs. of Highways,* 134 id. 569.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was a proceeding under the Eminent Domain law, instituted by the Sanitary District of Chicago, to condemn a large number of tracts of land for the construction and maintenance of the main channel of the district and its necessary adjuncts. Among the lands thus sought to be condemned were certain lands belonging to Wilson Ames, others belonging to Moses J. Wentworth, and a tract of land of somewhat irregular shape lying between the Illinois and Michigan Canal and the Desplaines river, containing 305 acres, and being at one place of the width of about 2000 feet, belonging to James C. Burke and John C. Burke. All of these various tracts of land were sought to be taken by condemnation, and the compensation to be paid for the Ames, Wentworth and Burke lands was assessed by the same jury, the compensation to be paid for the Burke lands being fixed at $45,750. A motion by the Burkes for a new trial being overruled, judgment was rendered upon the verdict, and they now bring the record to this court by appeal.

The bill of exceptions shows that at the commencement of the trial, but whether before or after the jury was impaneled does not appear, in compliance with an order of court previously entered on motion of counsel for the Burkes, directing the petitioner to file in the cause plans and specifications showing the manner in which the petitioner proposed to use their lands, the counsel for the petitioner produced and filed two topographical plats, plans or maps, showing the location, dimensions, character and description of the channel the petitioner was proposing to construct, with its necessary adjuncts. Upon the production of these plans and plats, counsel for the Burkes objected generally to their sufficiency, which objection was overruled by the court. Counsel thereupon entered their motion for a further order compelling the petitioner to file more complete and definite

plans, showing the use to be made of the lands sought to be taken, which motion the court denied. Exceptions to these rulings were duly preserved, and they are now assigned for error.

No specific objections to the plans or maps produced and filed were made at the time, nor are any made now, and we are therefore unable to determine what information as to the uses to which the lands sought to be taken were intended to be applied, counsel desired to obtain which was not furnished. If counsel needed more specific details as to the nature, location, dimensions or description of the proposed channel, or of such adjuncts or additions thereto as might be necessary or proper to cause the main channel to accomplish the end for which it was designed, they should have pointed out wherein the plans produced were defective and insufficient, so that the court could have seen whether further specifications were necessary.

It may also be noticed that, so far as appears, no suggestion was made to the trial court as to any purpose which the plans and specifications called for could possibly subserve, nor as to any relief of any character which counsel for the respondents proposed to base upon them. The court was then just entering upon the trial before a jury, not of the right of the petitioner to condemn all or any part of the respondents' land, but merely of the amount of the just compensation which the respondents were entitled to receive therefor. We are totally unable to see how, upon that question, the plans and specifications called for could have furnished the slightest aid to the court, jury or counsel. And so long as no other purpose seems to have been suggested, we are at a loss to see how the trial court can be charged with error in having refused to require their production.

It is now claimed, however, that the petitioner ought not to be permitted to condemn the entire tract of land belonging to the respondents, and that if the plans and

specifications called for had been produced, it would have
appeared that only a portion of the land was required
for the proper corporate purposes of the drainage dis-
trict, and, therefore, that as to the residue, its petition
should have been dismissed. But it does not appear that
any such claim was made before the trial court. No ob-
jection seems to have been made there that the condem-
nation of only a portion of the land was necessary for
the construction of the proposed channel, or that the
amount of land sought to be taken was in any degree
excessive. The respondents having, so far as the record
shows, failed to raise the question in the court below
that the amount of land sought to be condemned was ex-
cessive, they must be deemed to have acquiesced in the
condemnation of the entire tract, and it follows that the
refusal of the court to order the production of further
plans and specifications could have worked no preju-
dice to them.

This case differs from the case of *Tedens* v. *Sanitary
District*, 149 Ill. 87, in the fact that there objection was
made that the lands the petitioner was seeking to con-
demn were excessive in amount, and production of the
plans and specification of the drainage channel proposed
to be constructed was sought to be compelled, for the pur-
pose of showing that a strip of land much wider than
was reasonably necessary for the channel was being con-
demned. As no such objection appears to have been
raised in this case, the *Tedens case* can not be cited as
authority here.

The evidence tends to show that the lands in question
border upon the Desplaines river, and that, in common
with other lands above and below them, they are low,
and subject to overflow during periods of high water.
The respondents sought to show, as affecting the market
value of their lands, their capability of protection and
improvement by the erection of dikes sufficient to pre-
vent overflow, the cost of erecting such dikes, and the

market value of the lands when so protected. On the other hand, evidence was offered tending to show that the building of such dikes, by impeding the flow of water in the river during periods of high water, would cause the water to set back upon lands up the river, and thus materially increase the overflow of water upon such lands belonging to other proprietors. As applicable to the questions thus presented, the court, at the instance of the petitioner, gave to the jury the following instructions :

8.. "If you believe, from the evidence in this case, that the placing of dikes about the lands of the respondents, or either of them, will cause, in times of ordinary recurring floods in the Desplaines valley, the land of another to be overflowed, which, without said dikes, would not overflow, then the law is that the respondents may not make such dikes.

9. "The erection of dikes or embankments upon a person's land that tend to confine or restrict flow, and cause the waters of a river in time of ordinary recurring floods to overflow the lands of another, which, but for this, would not overflow, is an illegal act, and the court instructs you that the law does not permit a person to profit by his own wrongful act; and if you believe, from the evidence, that the erection of dikes on the land of the respondents, or either of them, will contract the natural waterway, impede the passage of the water and cause the waters of the Desplaines river, in times of ordinary recurring floods, to overflow the lands of another, which, but for this, would not overflow, then you have no right to consider the value of the respondents' lands with such dikes upon them.

10. "Although you may believe, from the evidence, that the lands owned by the Burkes are susceptible of being diked, still, if you further believe, from the evidence, that the construction of a dike that would benefit the Burke land would cause the property of another to

be overflowed by the ordinary recurring floods of the Desplaines river, which, but for such diking, would not overflow, then you are to exclude from your considera- tion everything pertaining to the question of diking, and its effect upon the Burke land, or the value thereof."

The rule laid down by these instructions is abundantly sustained by the authorities. Thus, in *Ohio and Missis- sippi Railway Co.* v. *Thillman*, 143 Ill. 127, we said : "It is settled by all the authorities, that it is the right of each proprietor of land upon a natural water course to insist that the water shall continue to run as it has been ac- customed to do, and to insist that no one shall obstruct or change its course, injuriously to him, without being liable in damages. As to running streams, a riparian proprietor has no right to alter their usual flow, in any manner injurious to others above or below him." In *Bur- well* v. *Hobson*, 12 Gratt. 322, the court, in answer to the suggestion of counsel that a riparian proprietor may law- fully protect his property from floods, by erecting a dike or other obstruction on his own land, though its neces- sary effect may be to turn the superabundant water on the land of his neighbor, said : "Such a distinction be- tween the ordinary and extraordinary flow of a stream is not laid down or recognized by any elementary writer, or in any adjudged case, so far as I have seen. The utmost extent to which the authorities seem to go in that direc- tion is, that a riparian proprietor may erect any work in order to prevent his land from being overflowed by any change of the natural state of the stream, and to prevent its old course from being altered. But he has no right, for his greater convenience and benefit, to build any- thing which, in times of ordinary flood, will throw the water on the grounds of another proprietor, so as to overflow and injure them."

"The owners of lands exposed to the inroads of the sea or of inland waters may erect walls and embankments to prevent the wearing away of the land, or to protect it

from overflow. It is lawful to embank against the sea, even when the effect may be to cause the water to beat with increased violence against the adjoining bank, thereby rendering it necessary for the adjoining landowner to enlarge or strengthen his defense. But this rule is not applicable to the case of embankments by the side of a river, whether public or private. A riparian proprietor is not only entitled to have the water flow to him, so far as it is a benefit, as, *e. g.*, to turn his mill or water his cattle, but in times of ordinary flood he is bound to receive the water, so far as it is a nuisance by its tendency to flood his land, and can not exclude the superabundant water to the injury of other proprietors. The owner of land bounding upon an inland stream may repair and restore the banks when broken, but he can not make different ones." Gould on Waters, sec. 160. See, also, *Gerrish* v. *Clough*, 48 N. H. 9 ; Angell on Water courses, sec. 334 ; *Hicks* v. *Silliman*, 93 Ill. 255 ; *Young* v. *Commissioners*, 134 id. 569 ; *Dayton* v. *Drainage Commissioners*, 128 id. 271.

As the respondents then had no legal right to improve their land by erecting dikes thereon in such manner as to flood the lands of others, it would seem to follow, necessarily and logically, that the value of their land, as affected by its capability of improvement in that manner, was not a proper matter for the consideration of the jury in assessing their compensation. This is only an application of the familiar legal maxim, that no person will be allowed to take advantage or profit by his own wrong.

But it is said that the eighth and ninth instructions above set forth are erroneous, because they hold that if placing dikes on the lands of the respondents, *or either of them*, will cause the land of another to be overflowed, the respondents may not make such dikes. As there were other respondents besides the Burkes whose cases were on trial. it is claimed that the jury were likely to under-

stand these instructions as holding that, if dikes on the land of the other respondents would cause overflow of the lands of others, the Burkes could not lawfully build dikes on their land. We do not think that any such interpretation was likely to be put upon these instructions by the jury. While the cases of several land owners were being considered at the same trial, the jury must have known that the trials were in legal effect several, requiring separate consideration and separate assessments of compensation. The instructions were manifestly intended to apply severally to each tract of land and to each land owner, and the jury doubtless so construed them.

Complaint is made of the refusal of the court to give to the jury the respondents' twelfth and fourteenth instructions. As the respondents' fifth instruction which was given contained substantially the same proposition embodied in those refused, and stated in a form quite as favorable to the respondents, there was no error in refusing these instructions.

The respondents' thirteenth refused instruction laid down the proposition that the respondents were entitled to recover compensation for any advantage or increase in value which may have accrued to their land by reason of the general benefits supposed to flow from the scheme of constructing the drainage canal, up to the date of filing the petition. Counsel for the petitioner assert in their brief that the record contains no evidence upon which such an instruction could be based. In our examination of the record we have found no evidence on that point, and as the counsel for the respondents have not taken the pains, either in their original or reply brief, to point out to us any evidence tending to support the instruction, we are justified in assuming that counsel on the other side are correct. At any rate, we shall not address ourselves to the task of exploring the very voluminous record before us for the purpose of hunting

up evidence on that subject, but shall accept the silence of the respondents' counsel as an admission that opposing counsel are correct.

Some other points are made by counsel for the respondents, all of which have been duly considered. But we do not regard them of sufficient importance to require special discussion. After carefully examining the case, and after having given patient attention to the suggestions of counsel, we have reached the conclusion that there is no material error in the record. The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*

