THOMAS SMITH *et al.*

*v.*

THE CLAUSSEN PARK DRAINAGE AND LEVEE DISTRICT.

*Opinion filed October 23, 1907.*

1. DRAINAGE—*Levee act is not void as a whole.* The unconstitutionality of those provisions of the Levee act pertaining to the ascertaining of compensation and damages to the owners of the property involved does not render the entire act invalid, and the same is complete and enforcible in connection with the Eminent Domain act.

2. SAME—*drainage district may avail itself of the Eminent Domain act.* A drainage district organized under the Levee act is engaged in a public work, and it has the right to avail itself of the provisions of the Eminent Domain act in acquiring land for its ditches and drains, notwithstanding the Levee act does not expressly confer such power.

3. SAME—*judgment establishing a drainage district sufficiently shows its right to condemn.* The final order of the county court establishing a drainage district organized under the Levee act is sufficient to establish its right to condemn land for its ditches and drains, and the legality of the organization of such district cannot be attacked in the condemnation proceeding.

4. SAME—*necessity for land condemned is a preliminary question.* Corporations will not be permitted to take private property for a use which the statute does not authorize, but if the use is a public one, within the meaning of the statute, courts will not inquire into the question of the necessity for all the land condemned

unless there is an apparent abuse of the petitioner's discretion; but the question of such abuse must be presented to the court as a preliminary question going to the right of the petitioner to condemn.

5. SAME—*when plans and specifications of drainage district are sufficient.* In a proceeding by a drainage district to condemn land for its ditch, plans and specifications showing the width, depth and course of the ditch, the quantity of dirt to be removed, where it would be placed and the height of the embankments, are sufficient, where it is not claimed by the defendants that the land sought to be taken is in excess of the amount needed.. (*Tedens* v. *Sanitary District,* 149 Ill. 87, distinguished.)

6. SAME—*what is sufficient certainty in description of land condemned.* The description of land sought to be condemned by a drainage district is sufficiently certain if from the description in the petition and exhibits a competent surveyor could definitely locate the land so sought to be taken.

7. SAME—*a drainage district may bind itself, by stipulation, to build farm bridge across ditch.* A drainage district organized under the Levee act, seeking to condemn land for its ditch, may, in order to reduce damages, bind itself, by a stipulation, that it will build a farm bridge across its ditch at a point to be designated by the land owner, and such stipulation is properly admitted in evidence and incorporated in the judgment. (*McCaleb* v. *Coon Run Drainage District,* 190 Ill. 549, distinguished.)

APPEAL from the County Court of Kankakee county; the Hon. A. W. DESELM, Judge, presiding.

This is an appeal from a judgment of the county court of Kankakee county in a proceeding to condemn lands, instituted by the Claussen Park Drainage and Levee District, against Thomas Smith, Harriet Smith, Thomas Daily, and others.

The proceeding was commenced by the drainage and levee district against the land owners for the purpose of acquiring certain land for ditches and drains. The petition was filed on the 9th day of February, 1907, and avers that petitioner is a body politic, incorporated and organized under the act of the legislature of the State of Illinois entitled "An act to provide for the construction, reparation and protection of drains, ditches and levees across the lands of

others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts," and alleges that the district was duly incorporated and established on the 8th day of October, 1906; that the drains and ditches are upon and across the lands and premises described in the petition and exhibit, and that the said lands are necessary for the construction, maintenance and the proper drainage of the lands within the boundaries of the said drainage district. The petition is in conformity with the requirements of the Eminent Domain law. Appellants each filed cross-petitions, claiming damages to lands not taken, and charged the necessity of bridges in order to enable the owners to use the land.

Upon a preliminary hearing it was stipulated that the lands sought to be taken were owned by appellants. The final order and judgment of the county judge of October 8, 1906, decreeing the establishment of the appellee as a drainage district pursuant to the statute, was introduced. Appellants also introduced, as preliminary proof, exhibits and plats of the proposed ditches and drains, and the testimony of witnesses as to the character of the ditches, drains, etc., and the necessity therefor, and in explanation of the plats, specifications and profiles; also evidence as to the failure of appellee to agree with appellants as to the compensation.

At the close of the evidence on the preliminary hearing the land owners filed a motion to dismiss the petition, alleging that no legal right to condemn had been shown; that the petitioner had not shown that it was legally incorporated, and alleging that it was not seeking to take the lands for the uses and purposes recognized by the Eminent Domain act. This motion was overruled by the court. A jury was empaneled to assess damages, and at the conclusion of the hearing returned a verdict assessing the damages of Thomas Smith at $212.55 and Harriet M. Smith at $106.60 for lands taken, and finding that as to each of these there were no damages to land not taken. The jury allowed to

Thomas Daily $413.25 for lands taken and $138.40 damages to land not taken. The land owners filed a motion for new trial, which was overruled. The land owners excepted and bring this cause to this court by appeal, assigning as error that the trial court erred in overruling the motion to dismiss the petition, admitting improper evidence, in giving instructions, in finding that appellee had the right to condemn lands, in denying motion for new trial and in rendering judgment on the verdict.

SMALL & BROCK, and SMITH & MARCOTTE, for appellants.

W. G. BROOKS, and BERT L. COOPER, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

*First*—The motion to dismiss attacks the jurisdiction of the court, appellants contending that certain provisions of the Drainage and Levee act which have heretofore been decided to be in violation of the constitution, and therefore invalid, bear such relation to the other provisions of the act as to invalidate the whole of the act, the contention being that if the whole act is void then the appellee has no legal existence, and hence no right to maintain this proceeding.

It is an established rule that where a statute is passed to accomplish a single object and some of its provisions are void, the whole act must fail unless sufficient remains to accomplish the object without the aid of the invalid portion; that is, if the part of a statute that is held to be unconstitutional is so mutually connected with the other parts of the statute that the object of the whole act fails if deprived of the invalid portion, then the whole act is invalid. (*People v. Olsen,* 204 Ill. 494.) This court held in *Wabash Railroad Co.* v. *Coon Run Drainage and Levee District,* 194 Ill. 310, that the provisions of section 16 of the Levee act of 1879, in so far as they authorized the court to empanel a jury in

drainage proceedings without notice to or participation by the owners of the land condemned, were in violation of section 13 of article 2 and section 14 of article 11 of the constitution, and also that the course of proceeding directed by section 17 of that act in determining compensation is not the judicial ascertainment of such compensation, as contemplated by the constitutional provisions bearing on the subject, and that such sections, in that respect, were in violation of the constitution, inoperative and void. In *Juvinall* v. *Jamesburg Drainage District,* 204 Ill. 106, we held that the part of section 37 of the Drainage act of 1879, as amended in 1885, which provides that "when the court so orders" the commissioners may assess damages and benefits in lieu of a jury, to be in violation of section 13 of article 2 of the constitution, which requires compensation for private property taken or damaged for public use to be ascertained by a jury. And these decisions are followed by this court in *Michigan Central Railroad Co.* v. *Spring Creek Drainage District,* 215 Ill. 501, where it is said: "There are two methods provided under the Drainage act for estimating benefits and damages: one is by a jury, as provided in sections 16, 17, 19, 20 and 21, and the other by commissioners, as provided in section 37. Both methods have been condemned by this court as unconstitutional and void. The only legal method by which a property owner can be deprived of his property for public use is by having his damages assessed by a jury duly selected, empaneled and sworn and acting under the direction of a court of competent jurisdiction."

These cases hold that in so far as the Levee and Drainage act purports to provide a method of fixing compensation for land taken it is unconstitutional, because where it provides for a jury it does not require that the land owner shall be made a party to the proceeding or receive any notice; and the other provision is, that such estimate shall be made by the commissioners, both, in effect, depriving the

land owner of the right to have his damages estimated by a jury duly selected, empaneled and sworn. These cases have the effect of invalidating this act only in so far as it purports to provide a method of fixing compensation or estimating the damages due to the owners of private property which may be taken for the public use of the district. As indicated by its title, the Drainage and Levee law is "An act to provide for the construction, reparation and protection of drains, ditches and levees across the lands of others, for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts." The invalid portions of this act are not so mutually connected with the other provisions that the object and purpose of the statute is defeated without the invalid provisions. The main purpose of the legislature in enacting this statute was to provide for the construction, reparation and protection of drains, ditches and levees and for the organization of drainage districts. This is a public purpose, and the fact that the provisions of the act relating to the method of ascertaining damages may be invalid does not invalidate the whole of the statute. The provisions of the statute other than those referred to are complete and enforcible in connection with the Eminent Domain law without the invalid portions, and hence the position of the appellants that the whole of the act is unconstitutional cannot be sustained.

*Second*—It is contended, also, that there is nothing contained in the Levee and Drainage act of 1879 authorizing drainage districts organized thereunder to exercise the right of eminent domain under the general law. In *Hutchins* v. *Vandalia Levee District,* 217 Ill. 561, this court said that after the Vandalia levee and drainage district had been organized it had the power to proceed, under the Eminent Domain act, by an original proceeding to condemn the property, citing *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Polecat Drainage District,* 213 Ill. 83. It is clear that the statute embraces drainage districts; that such

a district has the right to invoke the aid of the provisions of the act for the reason that it is organized to carry out "a public purpose," to do "a public work." The improvement and benefit to be derived therefrom are public in their character. There is no reason for denying the right of eminent domain to such drainage and levee district, and this court, by the decisions cited *supra,* has decided that the right exists in the drainage district to invoke the aid of the Eminent Domain statute. These cases have been re-affirmed in *City of Joliet* v. *Drainage District,* 222 Ill. 441, and *People* v. *Munroe,* 227 id. 604.

*Third*—Appellants contend that the evidence does not show that appellee is entitled to exercise the right of eminent domain under the general statute. The final order of the county court decreeing the establishment of appellant as a drainage district is in evidence, and this final order of the court was in conformity with the requirements of the statute in this respect. The appellants filed a cross-petition here, asking for damages to lands not taken. The appellee was organized under the Drainage and Levee act and had complied with the provisions of the Eminent Domain act. The position of appellants seems to be that this drainage district was not legally organized. In *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Polecat Drainage District, supra,* this court said (p. 86): "The question whether the appellee drainage district had been legally organized did not and could not arise in the proceeding for the condemnation of a right of way for the ditch across the lands of the appellant company. A petition to the Coles county county court for the entry of an order creating the district and a final decree or order of said county court establishing the district were produced in evidence. The statute invested the county court of that county with jurisdiction to entertain petitions for the formation of drainage and levee districts and to enter final orders establishing such districts. Jurisdiction and power were therefore vested in the county court to deter-

22 9 — 11

mine whether the petition bore the signatures of the requisite number of qualified petitioners and was in other respects in compliance with the statute.   Whether it correctly exercised such power or jurisdiction could not be considered in this a collateral proceeding.   * * *   The legality of the organization of a drainage and levee district can be attacked and brought under judicial review only in a direct proceeding by *quo warranto."*   This authority meets appellants' contention on this point and further comment is unnecessary.

*Fourth*—It is urged that appellee failed to prove an attempt to agree with appellants before commencing this suit. This contention raises a question of fact.   The record discloses that Robert Strandstra, one of the commissioners of the district, on November 22, 1906, called on the appellants Thomas Smith and Harriet M. Smith; that he spoke to Harriet M. Smith (who is the wife of Thomas Smith) and told her who he was, and stated that his business was to see her in regard to the land involved and wanted to make a settlement; that she told him to see her husband; that thereupon, in the presence of Mrs. Smith, he spoke to Thomas Smith, her husband, and offered him $65 per acre for the land; that Smith answered saying he wanted $5000. This witness states that he made each of the Smiths an offer of $65 per acre, and it appears that such sum was not satisfactory to them; that the appellants were demanding $5000 for the land taken.   On the same day this commissioner called on appellant Daily and offered Daily $65 per acre, and it was refused.   We are satisfied that appellants were well advised of the place and location of the land needed and substantially the amount of land to be taken; that an honest effort was made by appellee, through its commissioner, to settle or agree upon the compensation to be paid, and that appellee was unable to agree with appellants for the reason that the judgment of the commissioner and appellants differed as to the value of the land to be taken. There was a sharp contest as to the amount of damages.

In *Lake Shore and Michigan Southern Railway Co.* v. *Baltimore and Ohio and Chicago Railroad Co.* 149 Ill. 272, where the sufficiency of the proof upon this question was being considered, this court, on page 287, said: "Even where there is no direct testimony as to the truth of this allegation, yet the fact that there is a vigorous contest, as there is here, between the petitioning corporation and the owner of the property sought to be condemned, both on the original and on the cross-petition, is evidence of an inability to agree." Substantially the same language is used in *Ward* v. *Minnesota and Northwestern Railroad Co.* 119 Ill. 287. The allegation in the petition that the parties were unable to agree as to the compensation to be paid is fully sustained by the evidence.

*Fifth*—It is urged, also, that appellee did not show the necessity for the lands sought to be taken. The right of eminent domain, as granted by the statute, is in derogation of the common law. The provisions of the statute are most strictly construed against one who seeks to acquire property under it. In order to warrant the taking of private property it must appear that the land is required for a public use, within the meaning of the statute, and the proceeding must be in conformity with statutory requirements. When the use for which the land is required is one for which the statute gives the right to condemn, the question of the necessity for the land is largely left to the determination of the corporation, subject to the right of judicial review and revision for an abuse of the right. An abuse of the right of eminent domain will not be tolerated. The courts reserve the power to deny to corporations the right to invoke the aid of the statute of eminent domain to deprive private citizens of property which is not to be used for a public purpose. This power in the courts will not be exercised in such way as to deny to those entitled to it the full benefit of the statute. If the court finds that the use for which the property is to be taken is a public one, then the court will

not inquire into the extent to which the property is necessary for such use unless it appears that the quantity of property taken is grossly in excess of the amount necessary for the use.   The question of such abuse, however, must be presented to the court as a preliminary question going to the right of petitioner to condemn such property for such use. *Chicago, Rock Island and Pacific Railroad Co.* v. *Town of Lake Creek,* 71 Ill. 333; *Tedens* v. *Sanitary District of Chicago,* 149 id. 87.

*Sixth*—Appellants insist that the plans and specifications are insufficient.   It is argued that the insufficiency of plans and specifications furnished worked injury to appellants, in that the jury were unable to determine the damage to land not taken.   We have carefully considered the record on this question, and are of the opinion that the profiles and maps, in connection with the evidence introduced upon the preliminary, are sufficient to furnish information to appellants of the width, depth and course of the ditch, and also as to the quantity of dirt to be removed, where it would be placed and the height of embankments.   Appellants have no ground for complaint based on failure to furnish to them such information.   In this case appellants did not claim that the amount of land sought to be taken was in excess of the amount needed for the use to which the land was to be subjected, and hence *Tedens* v. *Sanitary District of Chicago, supra,* is no authority on this point for the position urged.   Here no question is made that all the land sought to be taken is not necessary for the use.   The contention of appellants, as appears from the motion, was that more definite plans and specifications were necessary in order to determine the value of land taken and damage to land not taken.   There was no error in the court's refusal to require appellee to produce additional plans and specifications.   *Burke* v. *Sanitary District,* 152 Ill. 125.

*Seventh*—Appellants next insist that the description of the lands is insufficient.   In determining this question it is

necessary to refer to the petition and exhibit.  By reference
to these we find that the land of appellant Thomas Smith is
described as being seventy-five feet off the south side of cer-
tain tracts described in the petition, and the land of appel-
lant Harriet M. Smith is described as being a strip of land
seventy-five feet wide, extending over and across a certain
tract of land, the center line of the strip being the center of
an old ditch which pursues a north-westerly direction from
a certain highway, and from a bridge on the highway to the
north-west corner of the tract described.  In like manner the
description of the land of appellant Thomas Daily is set out
in the petition and the particular location is embraced and
outlined in the map of the land taken, which is made an ex-
hibit to the petition.  We are of the opinion that any sur-
veyor, with the description contained in this petition and
exhibit before him, would be able to definitely locate this
land, and where the land is described with such certainty as
to enable this to be done it is all that the law requires.  The
acreage in each instance taken from each of these appellants
is mentioned in the petition, and we see no uncertainty in
the description.

*Eighth*—Appellant Daily insists that the court erred in
admitting a stipulation by appellee to build and maintain a
bridge across the ditch through his land.  Our attention is
called to the case of *McCaleb* v. *Coon Run Drainage and
Levee District,* 190 Ill. 549, and it is urged that this au-
thority supports the contention of appellant.  In that case
this court condemned an instruction telling the jury that it
was the duty of the commissioners of the drainage district
to construct such farm bridges as may be actually necessary
for the proper use of the lands in said district, and that the
cost of constructing such bridges should be paid out of the
corporate funds of the district, and further telling the jury
that they should take into consideration the benefit, if any,
arising from the construction of such bridges in making es-
timate of the damages or benefits of any tract or tracts of

land in said district. This instruction was held to be erroneous for the reason that the Levee act of 1879, under which the district was organized, contained no provision requiring the district to construct farm bridges at its expense, and therefore it was error for the court to advise the jury that it should take into consideration the benefits accruing to any tract of land from the construction of such bridge. The holding there is that the statute does not make it incumbent on the district to construct and maintain farm bridges across the ditch for the use of the land owner. That case is not decisive of the question here presented. In the case of *Pinkstaff* v. *Allison Ditch District,* 213 Ill. 186, we held that the expense of constructing a necessary bridge across such ditch is a proper element of damage for consideration of the jury.

The stipulation which was offered in evidence and incorporated in the final judgment of the court is as follows: "It is hereby stipulated and agreed by the said petitioner that it will build and erect across its ditch, as provided for by the plans and specifications herein, a good and sufficient wooden bridge at one point to be designated by the respective defendants, as hereinafter named, upon each of the lands of the following defendants hereto, to-wit: A. J. Cheffre, Thomas Daily, Ludwig Whittams, Leotine Manny and Leah Giasson, and will maintain and keep in repair said bridges."

In *Elgin, Joliet and Eastern Railroad Co.* v. *Fletcher,* 128 Ill. 619, on the trial of a condemnation suit, the petitioner stipulated in open court that it would build fences enclosing its right of way across the respondent's land by the first of May, 1888, which was an earlier date than the statute required such fences to be made, and that it would also construct, and thereafter maintain, suitable and proper underground crossings on the land of respondent. The sole object of such stipulation was to reduce the amount of damages. In disposing of the objection raised by the respondent to certain instructions referring to the stipulation, this court,

speaking by Mr. Justice Scholfield, on page 626, said: "We think it is competent, upon the trial of a condemnation case, for the party seeking condemnation to bind itself, by an offer in open court, to the performance of duties like those here offered to be performed, and to thereby, and to the extent that such performance will prevent damages that would otherwise occur, abridge the claim by the land owner for damages. (*Chicago and Alton Railroad Co.* v. *Joliet, Lockport and Aurora Railway Co.* 105 Ill. 388; *Hayes* v. *Ottawa, Oswego and Fox River Valley Railroad Co.* 54 id. 373.) The judgment in such case should vest the rights obtained by the condemnation, subject to the performance of such duties, so as to insure it, and that was sufficiently done here."

In our opinion the drainage district had power, as an incident to the power to condemn, to make the stipulation in question, and that a legal and binding obligation was thereby created, for a violation of which an action would lie. The stipulation is recited at large in the final judgment of the court and appellants' rights are thereby fully protected. There was no error in admitting the stipulation in evidence. No objection is made to the form of the judgment.

Errors are assigned upon the giving of instructions for appellee and the refusal of certain instructions asked by appellants. The instructions are not numbered or otherwise designated in the printed abstract so that we can certainly know what particular instructions appellants refer to. We have, however, examined the instructions, and our conclusion is that those given are not open to the objections made, and that appellants' given instructions covered all the questions in the case and presented the law as favorably to appellants as they were entitled to have it presented.

We find no reversible error in this record, and the judgment of the county court of Kankakee county is affirmed.

*Judgment affirmed.*