WILLIAM BAUGHMAN *et al.*

*v.*

LAFAYETTE HEINSELMAN.

*Opinion filed June 17, 1899.*

1. HIGHWAYS—*power of commissioners under section 8 of Road act.* Under section 8 of the Road act, highway commissioners have full power, in case of necessity, to institute proceedings to appropriate private property for the construction of a ditch to carry water from a highway, and such power is not controlled by the fact that such ditch will not carry the water as it would naturally flow in the absence of changes from necessary grading or filling.

2. SAME—*necessity for ditch is not a question for the courts.* Whether the necessity exists for a ditch draining the water from a highway in a direction other than it would naturally flow had the road not been graded, is a question to be determined by the highway commissioners, acting in their official capacity; and the exercise of their discretion will not be interfered with by the courts, in the absence of fraud or clear purpose of oppression.

3. INJUNCTION—*when highway commissioners should not be enjoined from constructing a ditch.* Highway commissioners having instituted proceedings to assess damages for the construction of a ditch on private property, from which proceedings the land owner has appealed, should not be enjoined from carrying out their purpose where no fraud or oppression is shown, and it does not appear the commissioners had any intention of constructing the ditch before the final determination of the appeal. (*Young* v. *Comrs. of Highways*, 134 Ill. 569, and *Hotz* v. *Hoyt*, 135 id. 388, distinguished.)

WRIT OF ERROR to the Circuit Court of Richland county; the Hon. E. D. YOUNGBLOOD, Judge, presiding.

H. G. MORRIS, for plaintiffs in error.

ALLEN & FRITCHEY, for defendant in error.

Per CURIAM: This was a writ of error sued out to bring in review in this court a decree entered in the circuit court of Richland county, restraining the plaintiffs in error Baughman, Kissinger and Walters, as commissioners of highways of the town of Madison, in the county of Richland, and plaintiff in error Flemming, as road

overseer of the same town, from cutting a ditch in the
lands of the defendant in error.

It appeared from the proof, without contradiction, and
also from the allegations of the bill, the said commis-
sioners, on the 23d day of September, 1898, applied to a
justice of the peace in and for the said county for a sum-
mons commanding that the defendant in error be sum-
moned to appear before the said justice for the purpose
of having the damages assessed which he would sustain
by reason of the digging and opening of the ditch in ques-
tion.   In support of their application they filed with the
justice a petition alleging that, in their official capacity
as said commissioners, they deemed it necessary for the
benefit of the highway that the ditch in question should
be cut commencing at a point in the highway and extend-
ing about three rods eastwardly to a ravine in the field
of the defendant in error; that they were unable to agree
with said defendant in error as to the value of the land
to be taken and his damages, and therefore instituted
the proceedings to cause such damages to be assessed.
It further appeared that the defendant in error was duly
summoned to appear before the justice and that he did
appear; that a jury was empaneled and the cause duly
heard and the damages to be paid to the defendant in
error assessed at $17.50, and that the defendant in error
had perfected an appeal from such judgment to the same
circuit court and to the same term at which the bill was
afterward filed.

The bill alleged that the natural flow of the water
from the point in the highway from which it was pro-
posed to dig the said ditch was westwardly across the
highway and over the lands of one James Kimmel, and
that said James Kimmel, Charles Flemming, Joseph Mar-
low and Bentley Newell entered into a conspiracy to
change the natural flow of the water from said road east-
wardly and over the lands of the defendant in error, and
in pursuance of such conspiracy threw up a levee in the

center of the road and dug a deep ditch on the east side of the road, thereby preventing the water from flowing in its westwardly and natural course and caused it to stand in a pond or pool in the ditch in said highway, which could have been easily avoided by a ditch and culvert across the levee. The bill further charged that the ditch would greatly interfere with access to the land of defendant in error on the south side of the ditch, and would damage his lands greatly in excess of the said sum of $17.50, and would compel him to take water on his premises which, if not obstructed, would have flowed on the lands of said Kimmel.

No proof whatever was introduced to support the allegation that the parties named as conspirators were guilty of the charge made against them, and the bill was dismissed as to all of such parties except said Flemming, the road overseer. It was clearly proven there was a low place in the highway in which water at times collected and there stood, rendering the highway muddy and interfering materially with its use by the public; that the plaintiffs in error, in the discharge of their official duties, respectively, caused earth to be taken from each side of the road and drawn into the center thereof in order to fill and grade the said depression and render the road passable, and that water collected and stood where the earth had been removed for the purpose of filling in and grading the highway, and that the commissioners considered that the most practical way to drain the water which so stood in the road upon the east side of the said grade was by means of a ditch some three rods in length in the premises of the defendant in error, through which said water could be discharged into a ravine which led to a natural water-course on his premises, and that he would not consent that the ditch should be excavated in his lands, and therefore the proceeding was instituted under section 8 of chapter 121 of the Revised Statutes, entitled "Roads," etc., for the purpose of securing the legal right

to cut the ditch there. There was no proof that the commissioners or the overseer, or either of them, contemplated entering upon the lands of the defendant in error unless they should be authorized to do so by virtue of a final judgment in the proceeding instituted before the justice of the peace, and pending, on appeal, for trial.

Whether the natural flow of the water from the point in the road in question was eastward or westward was the subject of much conflicting testimony, the solution of which, if important, would be attended with much difficulty. Highway commissioners, acting in their official capacity, are not restricted, in determining as to the proper course to be pursued in the matter of draining the public highways, to the selection of drains or ditches that will convey the water in the same direction or through the same lands over which it would flow in the absence of the changes resulting from necessary grading or filling of depressions in the line of the highway. One of the express purposes for which said section 8 of the Road and Bridge act was enacted is to enable highway commissioners to secure the legal right to enter upon the premises of individual owners and dig drains and ditches in order to convey water from the highway in a direction in which it would not run in the course of nature. The damages provided by the section to be awarded to the owner of the land are to compensate him for the burden of the public use to which his lands are to be devoted. The public have the right to have the surface water falling or coming naturally upon the highway, or collected there by reason of filling and grading the road to fit it for public use, to pass off through the natural or usual channels or outlets without making compensation for such privilege. (*Graham* v. *Keene*, 143 Ill. 425.) The commissioners of highways, representing the public, have full authority to institute proceedings to take and appropriate private property on which to construct drains and ditches to carry water from said highways, or to drain

a slough or pond on the highway, where necessity exists for the construction of such a ditch; and this power is in nowise controlled by the fact, if it be a fact, that such proposed ditch or drain does not lead the water in the direction of the natural flow thereof. Whether such necessity exists is a question to be determined by the highway commissioners acting in their official capacity, and, in the absence of fraud or a clear purpose of oppression, is beyond the control and jurisdiction of the courts. This principle has been frequently declared by this court. *Chicago, Rock Island and Pacific Railroad Co.* v. *Town of Lake*, 71 Ill. 333; *Dunham* v. *Village of Hyde Park*, 75 id. 371; *Smith* v. *Chicago and Western Indiana Railroad Co.* 105 id. 511; *Young* v. *Comrs. of Highways*, 134 id. 569; *Hotz* v. *Hoyt*, 135 id. 388; *Dierks* v. *Comrs. of Highways*, 142 id. 197.

The cases of *Young* v. *Comrs. of Highways, supra,* and *Hotz* v. *Hoyt, supra,* are cited as upholding the decree entered by the chancellor herein. In neither of these cases were the commissioners of highways proposing to enter upon the lands of the complainant in the bill by authority of a judgment of condemnation. In the former of the cases the commissioners proposed to divert water from its natural course and turn it upon the lands of the complainant in the bill without having first instituted condemnation proceedings under said section 8 of the Road and Bridge act. In that case we said (p. 577): "The manner in which the public highways may be improved must necessarily be left, to a great extent, to the mere discretion of the commissioners of highways, and in the exercise of the duties enjoined upon them by law they cannot be interfered with, unless they invade some private right of a citizen. * * * The commissioners of highways, where they undertake to drain a public highway, possess the same rights and are to be governed by the same rules as adjoining land owners who may undertake to drain their own lands, except where they may be proceeding under the eminent domain laws of the State." In the lat-

ter of the cases we said (p. 397): "The most that can, in any view of the evidence, be fairly claimed, is, that they (the commissioners of highways) were about to do a duty imposed upon them by law, in so unskillful a manner as to damage appellee.  *  *  *  That disputes and differences of opinion will arise between land owners adjoining public highways as to the best methods of improving them, and as to whether injury will result to abutting lands by a particular improvement, is inevitable.  Our statute has wisely clothed the commissioners of highways with the discretion of determining these questions, and unless it is clearly alleged and satisfactorily proved that they are about to abuse that discretion, to the injury of a third party, courts will not interfere." In neither of the cases is any principle announced which can be availed of to support the decree here under consideration.

The case of *Chaplin* v. *Highway Comrs.* 129 Ill. 651, does not announce any doctrine which is inconsistent with the other holdings of this court on this subject.  That was a bill in chancery by Chaplin to restrain the highway commissioners from entering on the lands of the complainant in the bill and digging a ditch therein under the authority of an alleged final judgment of condemnation in a proceeding under said section 8 of the Road and Bridge act.  The bill questioned the validity of the proceedings relied upon for condemnation of the complainant's property, and we held that under the peculiar facts of the case the justice of the peace before whom the condemnation proceedings were begun and prosecuted had no jurisdiction to entertain the proceeding, and that therefore the commissioners could not lawfully enter upon the premises of the complainant.

In the case at bar the bill recites the institution of an application for condemnation proceedings by the highway commissioners and proceedings before the justice, resulting in an assessment of the amount of the damages of the complainant by reason of the construction of the

proposed ditch, and that he perfected an appeal from that judgment, and it appears from the allegations of the bill, as to the date of the hearing before the justice, that the proceeding was pending for trial when the bill in this case was filed, and in the same court and to the same term.   The regularity and validity of the condemnation proceeding is not challenged in the bill, or by any evidence produced, or in the argument of counsel for defendant in error.   Excluding the allegation that persons other than the commissioners had entered into a conspiracy to cause the water which collected in the depression in the road to be carried out of its natural course of flowage and brought onto the lands of the complainant,—a charge which confessedly failed and was abandoned,—the bill is framed upon the theory that the commissioners have no power, in any event, to drain water from the highway in any other direction than that in which it would flow in a state of nature, and that it is in all times and in all cases within the power of a court of chancery to supervise and control the judgment and discretion of the highway commissioners as to the mode and manner in which the highways shall be graded, improved and drained.   The decree proceeds upon the same erroneous theory as to the power of the chancellor.   There is no proof the commissioners or the overseer even contemplated entering upon the land of the defendant in error unless first authorized to do so by final judgment in the condemnation proceeding which was then pending for trial on appeal.   The defendant in error could have obtained all relief to which he was entitled in the appeal proceeding.   The court should not have entered a decree for the complainant, (defendant in error,) but should have dismissed the bill.

The decree is reversed and the cause will not be remanded.

*Decree reversed.*