SAMUEL D. WARREN, and others, in equity,

*vs.*

WESTBROOK MANUFACTURING COMPANY.

Cumberland.    Opinion October 5, 1893.

*Waters.  Partition.  Islands.  Equity.*

Where there are two natural channels in a river caused by an island, the owners of the island are riparian owners as well as the owners of the main land opposite the island.

The riparian owners upon each of such channels are entitled to have flow through that channel as much of the water of the river as will naturally flow there and no more.

The riparian owners upon either of such channels must acquiesce in the flow through the other channel of as much of the water of the river as will naturally flow there.

In such case the waters of the river are divided by nature between the two channels, and the two sets of riparian owners; and however unequal that division may be, the court has no power to make it equal.

In such case a bill in equity by the riparian owners upon one channel against the riparian owners upon the other channel asking for a division between them of the whole flow of the water of the river cannot be sustained.

ON REPORT.

Bill in equity, heard on bill and demurrer, praying for a partition and division of the water of the Presumpscot River and of its use at Saccarappa Upper Falls between the riparian owners.

To accomplish this end the bill specially prays that, under the supervision of the court, provision may be made for dividing such water between the plaintiffs and the defendant according to their respective rights; and that for this purpose surveys and measurements of the water may be had and the said parties may be assigned their aliquot parts by such devices as are in common

use by hydraulic engineers to measure and allot water; also, that if necessary, a commissioner may be appointed by the court to take such measurements, and to do such other things as may be necessary, to provide the means by which the amount of water that the plaintiffs and defendant are entitled to draw at different stages of water, may be ascertained at all times.

The case is stated in the opinion.

*Strout, Gage and Strout,* and *Warren and Brandeis,* for plaintiffs.

Equity jurisdiction: R. S., c. 77, § 6; *Rowell* v. *Jewett,* 69 Maine, 293, 303; *Stinchfield* v. *Milliken,* 71 Maine, 567, 571. Legal remedy inadequate: *Bemis* v. *Upham,* 13 Pick. 169; *Lehigh V. R. R. Co.* v. *Soc. etc.* 30 N. J. Eq. 145, 161; *Lyon* v. *McLaughlin* 32 Vt. 423; *Bardwell* v. *Ames,* 22 Pick. 333, 354; *Lockwood Co.* v. *Lawrence,* 77 Maine, 297, 312, 313; *Lawson* v. *Menasha Co.* 59 Wis. 393, 398; *Harris* v. *Mackintosh,* 133 Mass. 228, 230. Multiciplicity of suits: *May* v. *Parker,* 12 Pick. 34, 40; *Belknap* v. *Trimble,* 3 Paige, 577, 600; 1 Pom. Eq. § 245; *Ballou* v. *Hopkinton,* 4 Gray, 324, 328; *Cadigan* v. *Brown,* 120 Mass. 493; *Reid* v. *Gifford,* Hopk. 416, 419, 420; *Murray* v. *Hay,* 1 Barb. Ch. 59; *Carlton* v. *Newman,* 77 Maine, 408; *Clowes* v. *Staffordshire Potteries Co.* L. R. 8 Ch. 125; *Thayer* v. *Brooks,* 17 Ohio, 489; *Hazeltine* v. *Case,* 46 Wis. 391. Continuous trespass and private nuisance: 1 Pom. Eq. § 245; *Burden* v. *Stein,* 27 Ala. 104, 112; *Livingston* v. *Livingston,* 6 Johns Ch. 497, 500; *Tuolumne Water Co.* v. *Chapman,* 8 Cal. 392; *Webb* v. *Portland Mfg. Co.* 3 Sumn. 189; *Corning* v. *Troy Iron Co.* 34 Barb. 485, 492; S. C. 39 Barb. 311, 327; *Holsman* v. *Boiling Spring Co.* 14 N. J. Eq. 335; *Carlisle* v. *Cooper,* 21 N. J. Eq. 576. Remedy in equity: *Nash* v. *Simpson,* 78 Maine, 142; *Monroe* v. *Gates,* 48 Maine 463, 466; *Head* v. *Amoskeag Mfg. Co.* 113 U. S. 9, 21; *Frey* v. *Lowden,* 70 Cal. 550; *Adams* v. *Manning,* 48 Conn. 477; S. C. 51 Conn. 5; *Burnham* v. *Kempton,* 44 N. H. 78; *Ranlet* v. *Cook,* 44 N. H. 512, *semble*; *Hanna* v. *Clarke,* 31 Gratt. 86; *Patten Paper Co.* v. *Kaukauna*

*W. P. Co.* 70 Wis. 659. Means of division : *Scovil* v. *Kennedy*, 14 Conn. 349 ; *Cooper* v. *Cedar Rapid W. P. Co.* 42 Iowa, 398 ; *Arthur* v. *Case*, 1 Paige, 447, 450 ; *Smith* v. *Smith*, 10 Paige, 470 ; *Olmstead* v. *Loomis*, 9 N. Y. 423 ; *Salem Co.* v. *Salem F. M. Co.* 12 Or. 378, 387. Counsel cited on the merits, besides the above : *Butman* v. *Hussey*, 12 Maine, 407 ; *Munroe* v. *Stickney*, 48 Maine, 462 ; *Soltan* v. *De Held*, 2 Sim. N. S. . 133 ; *Morrill* v. *Morrill*, 5 N. H. 134 ; *Adams* v. *Briggs Iron Co.* 7 Cush. 361, 364 ; Gould on Waters, § 540.

The title of the plaintiffs to a fixed proportion of the water power is alleged in the bill, and admitted by the demurrer, and it is to enable the plaintiffs to make an immediate use of water to which they are entitled that the present bill is brought. The plaintiffs have alleged that they have "immediate use for all the water and water power rightfully belonging to them at Saccarappa Upper Falls, and are desirous of using and fully intend to use all they are entitled to." It is impossible for the plaintiffs to make this use of the water while the defendant persists, as for three years past it has done in spite of their protests, in using a large part of the water to which the plaintiffs are entitled, and, as alleged in the bill, "it will be impossible to secure hereafter to the several parties their respective rights to the use of the water" without providing some means of regulating the use by each.

*W. L. Putnam*, for defendant.

Rights must be admitted or established at law. Ang. Wat. § 447 ; *Pierce* v. *Rollins*, 83 Maine, 172, 177 ; *Nash* v. *Simpson*, 78 Maine, 142-150.

No allegations in bill that title is clear, admitted or established at law. It does not appear that defendant claims to use more than one half of the water, or what it does claim to use. Defendant may lawfully use the whole power of the river until plaintiffs desire to use their proportion. Bill shows no present or existing controversy. It should allege the precise amount of water or power the plaintiffs are entitled to.

Plaintiffs do not state a title. All their allegations concerning their title proceed on the hypothesis of a division of "water,"

and of the right to "water," which flows through a particular channel, or through a particular part of the channel. They make a title in no other way. But the rule is that parties on each side of a river are entitled *per my et per tout* to the water of the river for the purpose of creating their share of the power,. subject only to the qualification that where, from a peculiar· formation of the bed of the river, or the channel, the water at low stages will naturally run to one man's mill, instead of to. another, his mill may run longer than the mill of the other.

SITTING : PETERS, C. J., WALTON, LIBBEY, EMERY, FOSTER,. WHITEHOUSE, JJ.

EMERY, J. This equity cause was heard on bill and demurrer. The case stated, independent of the legal inferences drawn, is. substantially as follows. The Presumpscot River, a non-tidal. stream, as it flows through Saccarappa Village at the place called Saccarappa Upper Falls, forms an island about three hundred and fifty feet long, and one hundred and fifty feet wide. In forming this island, the river divides itself into two branches or· channels ; one flowing on the easterly side, and the other on the· westerly side of the island. In each of these branches or channels, are falls affording valuable water power. A dam has· long been built across each channel. These dams are substan- tially in line with each other, and form with the island a continuous dam across the whole river. There are several mills on the island, and other mills on each side of the main river opposite the island. The mills on the eastern mainland, and on the eastern side of the island, are supplied with water from the dam across the eastern channel. The mills on the western mainland and on the western side of the island, are supplied with water from the dam across the western channel. The bill does not expressly describe the mills and their location, but the facts are so well known and conspicuous, they may properly be added to the description of the general situation.

The plaintiffs, other than Mary Little Hale Dana, own the western side of the island, the land under the western channel,

and the land on the west side of the river opposite the island. They also own the dam across the western channel and the mills supplied by it.

Mary Little Hale Dana, one of the plaintiffs, has some interest on the west side of the river. She also owns the eastern side of the island and the adjoining land under the water to the middle line of the eastern channel. She further owns so much of the dam across the eastern channel as is on her land, together with the mills on the easterly side of the island, supplied from this dam.

The defendant company owns the land on the east side of the river opposite the island and the adjoining land under the water to the middle line of the eastern channel, or to the land of Mrs. Dana. It also owns so much of the dam across the eastern channel as is on its land, together with the mills on the eastern main shore which are supplied from this eastern dam.

All the plaintiffs are therefore the sole riparian owners on both sides of the western channel, and owning the land under that channel. Mrs. Dana is the sole riparian owner on the west side of the eastern channel, and owning to the centre line. The defendant company is the sole riparian owner on the east side of the eastern channel, and owning to the centre line.

We are now to consider the various rights and duties of these different riparian owners, in the flow of the water of the Presumpscot River to and past their lands. It should be continually borne in mind that we are considering the legal rights and duties based on the situation of the parties, and unmodified by any statutes, contracts, grants or prescriptions. None of these latter matters are stated in the bill, and their possible modifying effects are not considered here.

As against other riparian owners up the river from them, they are all entitled to have all the water of the river flow down to their lands to the extent it would naturally flow there, subject to a reasonable use of the flow by such upper riparian owners as it passed their lands. As against riparian owners below, they are entitled to have the water flow from their lands to the same extent. So far their rights are similar and equal if not identical.

But at the head of the island the flow of water in the river is divided by the island. Part of the water thence flows through the western channel past the lands of the plaintiffs, and does not touch in its flow any of the land of the defendant, nor any of the land of Mrs. Dana on the east side of the island. The other part of the water thence flows through the eastern channel past the land of Mrs. Dana and the land of the defendant, and does not touch in its flow any of the land of the other plaintiffs.

The island, in thus dividing the flow of the waters in the river, has divided the rights of the parties to this suit. The plaintiffs are entitled to have flow through the western channel, past their lands on and under that channel, so much of the water of the river as would naturally flow there and no more. The defendant and Mrs. Dana, on the other hand, are entitled to have flow through the eastern channel, past their lands on and under that channel, so much of the water of the river as would naturally flow there and no more. As between the channels, neither party can lawfully do anything by sheer dams, or by widening or deepening his channel, or by any other means, to cause a greater proportion of the water to flow through his channel. On the other hand, neither party is obliged to maintain dams or any other appliances on his channel to check the natural flow there, and thus turn more into the other channel. Either party may remove all existing dams from his channels and leave the water to flow there naturally, unimpeded by artificial obstructions. This may lessen the hitherto accustomed flow in the other channel, but as it would not lessen the natural flow there, it would not infringe upon any legal rights of the party on that channel. At the same time, if either party checks the natural flow through his own channel by dams, closed gates or otherwise, and thereby increases beyond nature the flow of water through the other channel, the other party on that other channel can lawfully make use of such extra flow. He can lawfully use all the water that nature or other parties send to him. He is not bound to let it go to waste. In fine, either party on his own channel as against the other party on the other channel, may do as he will with his land and the water flowing past it,

through his channel, so long as he does not thereby cause a lessening of the natural flow through the other channel.

If by reason of the greater natural width or depth, or fall of one channel, a greater proportion of the water of the river flows through that channel than through the other, this greater proportion is the proper natural advantage of the party located on that channel. It is the proper natural advantage of the location for which he presumably paid when he acquired the land on the more favored channel. It is an advantage he cannot be required to share with the party on the other and less favored channel. Such other party cannot avoid the natural disadvantages of his less desirable location. This inequality, when it exists, is natural not legal. It is decreed by nature, and human courts are powerless to correct it.

The foregoing propositions seem almost elementary — not needing any citation of authorities to sustain them. See however 3 Kent Com. 428; Ang. on Waters, § § 16, 44, 49; Gould on Waters, § 166; *Crooker* v. *Bragg*, 10 Wend. 260; *People* v. *Canal Appraisers*, 13 Wend. 355, 371; *Kimball* v. *Gearhart*, 12 Cal. 29; *Nevada Canal Co.* v. *Kidd*, 37 Cal. 282; *Fulmer* v. *Williams*, 122 Pa. St. 191; *West* v. *Fox River Paper Co.* 82 Wis. 647, 655 *et seq.* Indeed, the plaintiffs in their bill have assumed the correctness of the main proposition. In the second paragraph of their bill, they state that they at one time sold the right to take a certain quantity of water power from their dam across the western channel. They apparently did this without consulting the riparian owners on the other channel.

Having considered the situation and consequent legal rights of the various parties in this suit, we now turn to the plaintiffs' complaint and prayer as stated in their bill. These are based on the following assumptions, viz: 1, — that the defendant is entitled to only one fourth of all the water flowing to and through both channels. 2, — that the plaintiffs are entitled to three-fourths of all the water so flowing, and now desire and are planning to use it. 3, — that the defendant against the protest of the plaintiffs has been drawing out of the dam across the eastern channel, and using to turn his mill on the east side of

that channel more than his one fourth of all the water in the river. They admit, however, in the fifth paragraph of their bill that they some time ago shut down a large saw-mill on the westerly side of the western channel which had been using a large quantity of water. This shutting down of the saw-mill on the western channel undoubtedly increased the flow of water through the eastern channel. That the defendant used the increased flow thus voluntarily turned to it by the plaintiffs affords them no legal ground of complaint, even upon their own assumption. But however that may be, the plaintiffs say they now desire and are planning to use all the water and water power rightfully belonging to them, and want their three-fourths share of all the water of the river flowing to and through both channels ascertained and marked out for them.

Their prayer is that the court will make a division of the waters of the Presumpscot River at Saccarappa Upper Falls between the plaintiffs on the one hand and the defendant on the other, and mark out for each party his share ; and that to this end the court will cause skilled engineers to make surveys and measurements of the waters of the river, (meaning all the waters flowing to and through both channels,) and provide instrumentalities for determining and indicating each party's aliquot part or share of the water at all times.

As between opposite riparian owners upon the same channel the court might have jurisdiction to equalize each owner's use of the water, and to mark out beforehand each owner's share, and this by any appropriate proceedings and instrumentalities. If Mrs. Dana as riparian owner on the west side of the eastern channel, opposite the defendant, should desire such relief, it might perhaps be within the power of the court to act and accomplish the desired result. Opposite riparian owners upon the same channel have a common and equal right to the use of all the water flowing in that channel as it passes their opposite lands. If the volume and flow of water be limited, the use by each opposite riparian owner may be limited by judicial action in proportion, so that the enjoyment be kept equal, like the right.

Where, however, the waters of a river are divided by an island so that, as alleged in the bill, they flow past the island in two distinct channels, and where the island is itself divided in ownership as also alleged in the bill, the riparian owners on the two main shores opposite the island, are not opposite riparian owners with common and equal right to the use of all the water flowing between them. On the contrary, each such owner has for an opposite, the owner of that part of the island facing his land. Their equal and common right is confined to the flow of the water in the channel between them. They have no legal right in common or in severalty in the water naturally flowing between other owners on another channel on the other side of the island where they have no land.

The fallacy in the plaintiffs' reasoning is their assumption that because they own among them three shores out of four, that is, one main shore and the two island shores, they are therefore entitled to three-fourths of the water of the river flowing between the two main shores without regard to the island. Indeed, we are urged to take a broad view of the subject; to overlook the island, and see one river, one current of water, one dam, one water power with the defendant on one side and the plaintiffs on the other, and then proceed to ascertain, determine, define, and indicate each person's aliquot part of the whole water of the whole river. Should we do so, we must inevitably measure off to the defendant one half of that whole flow. If there is only one current between him and the plaintiffs, his right in that current is equal to theirs. What the plaintiffs really seek to have us do is, not to overlook the island, but to notice it, and then assume that the two channels are equal and the two currents equal, and hence that the defendant is only entitled to one half of one half (*i. e.* one fourth) of the water of the river. If the assumption be correct, there is no need for the court to intervene farther than to regulate the use of the flow in each channel by itself, in case the owners upon that channel are in conflict among themselves. The island has made a preliminary even division which need not be re-examined. If, however, the assumption be incorrect, and one channel, say the

eastern, is visibly wider, deeper and with a better fall than the other, then, as has been said above, the defendant being a riparian owner on the eastern or larger channel is entitled to one half of the use of all the natural flow of water in that channel, even though it be three-fourths or more of all the water flowing down the river.

But we cannot overlook the island. It is there, populous and conspicuous. Nature placed it there. She divided the waters of the river into these two channels by its means. Whether this division was equal or extremely unequal, the parties found it already made when they located and invested there. They presumably accommodated themselves to that natural division. If they have not done so, they should. They may attempt to equalize matters to any extent by contract, but if either owner refuses to yield his natural advantage of location, the court cannot be expected to attempt to make equal what nature has made unequal.

It is particularly urged that, the two dams being in the same line, the island is only a part of one whole dam across the whole river and should be so considered. When it is recalled, however, that Mrs. Dana and the defendant own the whole of the eastern dam, and could lawfully remove that dam entirely without consulting the owners of the western dam, it becomes evident there are two dams instead of one. In the same way it also becomes evident there are two water powers instead of one. We are satisfied that the bill states no ground for the interposition of the court between the present parties. The plaintiffs have submitted their present case upon this bill, and the judgment must be that the bill cannot be sustained. If there are any other grounds for relief between some or all of these parties, they can be stated and considered upon a new bill. This bill must be dismissed with costs, but out of abundance of caution such dismissal should be without prejudice.

*Bill dismissed with costs but without prejudice.*