DAVID B. WILSON *vs.* THE CITY OF WATERBURY.

THE D. B. WILSON CO. *vs.* THE CITY OF WATERBURY.

Third Judicial District, Bridgeport, October Term, 1900.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A landowner cannot recover from the city for an injury from sewage which he might have prevented had he exercised reasonable care in placing his check-valves.

A city which is given power to utilize and improve a stream as part of

its sewerage system, is not liable to damages merely for refusing or failing to exercise that power.

A different question would arise should it appear that the city's execution of a part only of the adopted plan had necessarily so increased the flow as to render the stream incapable of carrying it off without injury to others.

A city is not liable for failing to widen and deepen the channel of a brook so that it will safely carry off an increased flow of water due solely to the growth of the city, the opening and paving of streets and the construction of highway gutters, within the natural drainage area of the stream. In opening and paving such streets and gutters the city is performing a governmental duty, and is not responsible for incidental harm resulting therefrom.

It is immaterial that this condition of things was anticipated and provided for in a sewerage plan adopted by the city, since the city was under no legal obligation to carry out the plan.

Argued October 31st—decided December 18th, 1900.

ACTIONS to recover damages for injury to premises claimed to have been caused by negligence of the defendant in the construction and use of its sewerage system, brought to the District Court of Waterbury and thence by the defendant's appeal to the Superior Court in New Haven County and reserved by that court, *Ralph Wheeler., J.,* upon a finding of facts, for the consideration and advice of this court. *Judgment advised for defendant.*

The material facts found, applicable to each of these cases, are in substance these : The plaintiffs were the occupants of certain lands and buildings fronting upon East Main Street in Waterbury, at the time of the injuries complained of. At that time and long before, the city of Waterbury under its charter had the power, conferred upon it at its own request, to construct sewers, to take and use any natural watercourse or brook as a sewer, to put it in condition for such purposes, and to condemn land for such purposes. Little Brook is a natural watercourse running through the city from north to south, passing through the property of the plaintiffs' and others, crossing under certain city streets, and emptying into Great Brook.

In 1882 the city adopted a plan for a general sewerage system, and soon after entered upon the construction of a part

of that system. Among other things, this plan provided (1) that the sewers should be used only for house sewage and part of the roof water; (2) that Little Brook should be taken and used as a part of the plan, and that its channel should be deepened, widened, straightened and put and kept in condition to carry off harmlessly all surface water within its drainage area, except such roof water as might be admitted into the sewers; (3) that this work upon Little Brook should have relation to the construction of sewers in North Main and East Main streets and their connections, " and should fully meet and anticipate all the needs and requirements of the rainfall and surface drainage of the watershed of that brook, in view of the serious effects of heavy rains likely to be caused by the extension, the grading and paving of streets, the construction of gutters leading directly into the brook, and the increase of dwellings."

The North Main and East Main street sewers were laid in 1884, and are insufficient to accommodate any considerable quantity of surface water in addition to sewage and roof water. Before the injuries complained of the city had substantially completed its sewer system. " Since the construction of the sewers a large number of new buildings have been erected upon the territory which is drained by Little Brook, a number of new streets have been opened, streets have been paved to some extent by the defendant, and gutters laid along the sides of some of the streets directly into the brook. In consequence of the improvements made, a large quantity of surface water has been drained into the brook, which before the improvements did not reach this natural outlet so quickly or in such volume, and perhaps did not reach it at all, because it percolated into the soil."

Before and at the date of the injuries complained of the brook had become incapable, during ordinary heavy rains, of carrying off harmlessly all the water that flowed into it. This resulted in part from the increased flow of surface water into it as hereinbefore stated, and in part from its lessened natural capacity caused by obstructions of various kinds in its channel at divers points where it crosses private property. The brook

could easily have been made sufficient to carry off harmlessly all water flowing into it.

Prior to the injuries complained of the city never took and used the brook in the manner contemplated in the plan, and never did anything to its channel where it crossed private property to make it capable of meeting the increased demands upon it in times of heavy rain storms. The city knew that the brook overflowed and did harm during such storms. In February, 1896, and in July, 1897, there were heavy rain storms which caused the brook to overflow and do the damage here in question. These were ordinary storms, and the overflow occasioned by them, and the harm done thereby, might have been reasonably expected. These are the material facts found upon this part of the case.

The plaintiffs also claim that the setback of water from the East Main Street sewer during these same storms contributed to the harm done by the brook. The material facts found as to this matter are these: The plaintiffs' rain water leaders and sewage pipes drained into the East Main Street sewer through a common outlet in plaintiffs' cellars. The East Main Street sewer empties into the North Main Street sewer. The city, contrary to the plan adopted in 1882, had turned some surface water into the North Main Street sewer. During these storms the latter sewer became so full that it impeded the flow of sewage in the East Main Street sewer, and caused such sewage to set back against the plaintiffs' check-valve at the common outlet aforesaid, and closed the outlet. In consequence of this some of the plaintiffs' sewage and roof water was held back and forced out into the plaintiffs' cellars, and mingled with the water from the brook. If the plaintiffs' check-valves had been properly placed this injury from their own pipes would not have occurred, and this they might have known by reasonable inquiry.

The general questions reserved are whether, upon the facts found, the city is liable for the injury caused by the overflow of the brook, or by the setback of water from the sewer.

*Lucien F. Burpee* and *Wilson H. Pierce*, for the plaintiff.

*John O'Neill* and *John P. Kellogg*, for the defendant.

TORRANCE, J.   The plaintiffs claim that the city is liable
for the damage done to their property (1) by the water from
the brook, and (2) by the water set back from the sewer.
The last claim will be first considered.

As the water from the brook filled the cellars to overflow-
ing, it would seem as if the actual injury from the setback
of the sewer water must have been very slight; and indeed
the claim upon this point was not very strongly pressed upon
the argument.   Upon the facts found upon this point, we
think that whatever damage the plaintiffs may have suffered
from this source was due to their own fault in making con-
nection with the sewer.   They might have so placed the
check-valve as to have avoided the particular damage from
this source of which they now complain, and they are charge-
able with knowledge that the connection which they made
with the sewer was of such a nature as to be likely to pro-
duce such damage.   Whatever injury the plaintiffs suffered
from the sewer was due mainly to their own negligence, and
for such damage they cannot recover from the city.

Upon the question whether, in the absence of negligence
on the part of the plaintiffs, the city would be liable, upon
the facts found, for damages caused by the setback of water
in the East Main Street sewer, we express no opinion.

The next question is whether the city is liable, upon the
facts found, for damage done by the overflow of the brook.
The reasons for the claim that the city is liable are stated in
the plaintiffs' brief in substance as follows: (1) Because it
had neglected to complete the system of sewage disposal
approved and adopted in 1882, which included Little Brook
as an essential part, and required that it should be put in
condition throughout its entire length to carry off harmlessly
all surface water from its drainage area in times of storm;
(2) because it had made numerous public improvements, in
consequence of which a large quantity of surface water had
been drained into said brook which would not otherwise have
reached it, or would not have reached it so quickly, and had

not put and kept the channel in a condition to accommodate these additional requirements.

No reasons in support of this claim, other than these, were suggested upon the argument, and no others are suggested by the record; so that if these fail to support it, as we think they do, the claim is without foundation.

The first reason does not support the claim. It is true the finding shows that the improvement of Little Brook was a part of the general plan adopted in 1882, and that although the city has substantially carried out the plan in other respects, it has not carried out that part of it relating to this brook; but from this alone it by no means follows that the city is liable for the consequences flowing from its failure to execute this part of the plan. The city was at liberty to carry out the plan in whole or in part at such times as it saw fit. The mere fact that it laid a sewer in one street did not make it liable for not laying one in another street; and the mere fact that it laid sewers in its principal streets did not make it liable for harm caused by its neglect or failure or refusal to put Little Brook into the condition contemplated by the plan. In short, the mere fact that it adopted a plan and executed a part of it, does not make it liable for failing to execute some other part of it. The city had the power to utilize and improve Little Brook as a part of its sewer system, but no law makes it liable for merely refusing or failing to exercise that power.

If the part of the plan which was executed had necessarily so increased the flow of the brook as to make it incapable of carrying off such flow harmlessly, and such fact had been found, that would present a question different from any now in the case; but no such fact is found, and it is clear from the finding that the increased flow of the brook between 1882 and 1897 was in no way caused by the part execution of the general plan. It follows from this that the first reason does not support the claim.

The second reason advanced in support of the plaintiffs' claim is, in effect, this: that the city, in the ways described in the finding, caused the increased flow in the brook, and is

therefore liable for not putting the brook in condition to carry it off harmlessly.

This reason has no foundation in fact. The city emptied no sewage into the brook, and it led into it no water coming from outside of its drainage area. The increase came indirectly and incidentally from the growth of the city; it was caused in part by the erection of buildings, and the opening and paving of streets, and the surface water as such flowing therefrom into the brook; and in part by the surface water collected in highway gutters leading directly into the brook. It is true that this condition of things was anticipated and provided for in that part of the plan adopted relating to Little Brook, and the city had the power to prevent harm resulting from this condition by executing that part of the plan; but there is no law which imposed upon it liability for such harm because of its failure to exercise that power. It might possibly be liable for consequences resulting from such failure if it had directly created the conditions in question; but there is nothing in the finding to show that the city did directly create them, in any such sense as to make it responsible for them.

In all that the city, in its corporate capacity, did within the drainage area of this brook, in opening and paving the streets and gutters, it was performing a governmental duty, and in all that it did in disposing of the surface water in those streets in performance of that duty it appears to have acted within its rights and in a reasonable manner. Under such circumstances it is not responsible for incidental harm resulting from such performance. *Judge* v. *Meriden*, 38 Conn. 90; *Bronson* v. *Wallingford*, 54 id. 513; *Byrne* v. *Farmington*, 64 id. 367; *Downs* v. *Ansonia*, 73 id. 33. In no proper sense then can it be said that the city caused the increased flow of water in the brook in times of rain.

But even if it could be shown that the city had wrongfully diverted some of its street surface water into the brook by highway gutters, and so contributed to the burden of the brook, this, though it might possibly make it liable for such wrong to one injured by it, would not make it liable for not

putting the brook into the condition contemplated by the plan; and it is for its failure to do this that this suit is brought, and not for a mere wrongful diversion of water into the brook.

Upon the facts found, then, we think that the acts of the city, within the drainage area of the brook, or elsewhere, were not the cause of the increased flow of the brook, in any such sense as to make the city liable for failing to widen, deepen, and otherwise change its bed and channel as was contemplated in the general sewerage plan. It had and has the power to do this at its discretion, but upon the facts found it is not liable for the consequences flowing from a mere failure to exercise that power.

The Superior Court is advised to render judgment in each case for the defendant, the costs in this court to be taxed in favor of the defendant.

In this opinion the other judges concurred.