Argued October 8, modified November 23, 1920.

# HANSEN *v*. CROUCH.

(193 Pac. 454.)

**Waters and Watercourses—Watercourse may not be Obstructed by Land Owner Where Entering His Land to Injury of Upper Proprietor.**

1. A stream flowing through plaintiff's land into that of defendant, if constituting a watercourse within the meaning of the common law, may not be obstructed by defendant at its entrance into his land, unless he provides some equally convenient method for draining plaintiff's land.

**Waters and Watercourses—Stream Arising from Seepage or Collected in Channel Held a "Watercourse."**

2. A stream existing from time immemorial, made by flow of waters arising from seepage from the hills or collected in one channel by the general slope of the surrounding country, having well-defined banks through which water is accustomed to ' flow, serving the useful purpose of carrying away water that would otherwise accumulate on the lands, and having a flow, though not continuous, fairly regular, and not the offspring of sudden and unusual freshets, is a "watercourse" within the common law.

**Waters and Watercourses—Land Owner may Change Course of Stream if not Injuring Others.**

3. Where a watercourse draining plaintiff's land enters that of defendant, he may drain it by a ditch on his land; plaintiff's only right being that its flow shall not be arrested, so as to turn it back on her land.

**Injunction—Comparative Injury not Considered in Case of Continuing Trespass.**

4. The Supreme Court of Oregon is not inclined to apply the rule of comparative injury in determining whether an injunction shall issue in the case of a continuing trespass.

From Coos: JOHN S. COKE, Judge.

Department 1.

This was a suit to enjoin the defendant from filling in and thereby obstructing the channel of an alleged natural watercourse so the obstruction caused

---

On right of land owner to impede flow of stream from lands of
. another, see note in 85 Am. St. Rep. 708.

On the question of liability for damming back waters of stream, see note in 59 L. R. A. 817.

the water to flow back upon the land of an adjoining proprietor to her damage.

The weight of evidence tends, in our opinion, to show that for many years plaintiff and her predecessors in interest have been the owners of a tract of land in Coos County abutting upon a body of tide water or inlet known as Haynes Slough. The defendant is an adjoining proprietor upon the east, and his land also abuts upon the slough and is slightly lower than the land of plaintiff. Originally a large portion of the lands of both plaintiff and defendant, and in fact all of that which forms the subject of this dispute, was salt marsh covered by high tides, incapable, in its natural state, of cultivation, and valuable only to a limited extent for the purpose of pasturage. About 1898 Coos County straightened and improved Haynes Slough by dredging, and the soil taken from the slough was deposited on the south bank in such quantities that it constituted a substantial dike in front of the lands of plaintiff and defendant, preventing the ingress of the tides except when they are unusually high and there is a freshet at the same time. When there is an overflow at these times the water runs off in a short time as the tide recedes. The result of this dike has been practically to reclaim the marsh lands so that with proper cultivation they are highly productive. Defendant has so improved the lands affected by this suit that their value is now estimated at about $200 per acre. Plaintiff had not at the commencement of this suit begun the intensive cultivation of that portion of her land affected by the alleged wrongful operations of the defendant, having become the owner of the place only a short time before, but the evidence indicates that under like treatment it would become as

valuable as the improved land of defendant, and her testimony shows that but for the alleged act of defendant she would have begun plowing and cultivating it last year. Running across the northerly portion of plaintiff's land is a small tidal stream or slough varying from eighteen inches to three feet in depth and from two to four feet in width, and carrying a very small quantity of water, except when the high tides fill it, but apparently collecting from seepage from the hills and adjacent lands a sufficient amount so that there is always some water in it, which flows almost imperceptibly in a northerly and easterly direction over plaintiff's land, draining a portion of it. At a point approximately one hundred twenty-five feet north of the dike heretofore mentioned this stream bends eastward and crosses over on to the land of defendant, pursuing there a serpentine course first southerly, then easterly, and then afterwards northerly until it reaches an elbow of Haynes Slough, which has since been closed at both ends by the dike before mentioned, and where by reason of the dike and the formation of the ground there is a reservoir capable of containing the drainage water and permitting it to flow through a tide gate into Haynes Slough. Owing to the fact that many of the points referred to by the witnesses are not designated by letters or figures the above description alone may not be technically accurate, but it is believed to be approximately correct.

The evidence indicates that defendant in improving his land has filled up the waterway above mentioned, with the result that it causes the water which originally ran off through the waterway above mentioned to be detained at the point where the stream crosses the line dividing the lands of plaintiff and defendant

and caused to flow back upon plaintiff's land, submerging about an acre and causing from two to four acres to be unfit for cultivation or pasturage. If the stream is opened and the fill removed, it will render about the same amount of defendant's land unfit for cultivation, which land in its present state is worth perhaps $800. We are of the opinion that a ditch approximately 125 feet in length dug along plaintiff's east line and communicating with Haynes Slough would obviate every difficulty now suffered by plaintiff.

The Circuit Court found that the waterway in question was an ancient watercourse, enjoined defendant from further filling it in, and assessed plaintiff's damages at $25, from which decree defendant appeals.                                MODIFIED.

For appellant there was a brief and an oral argument by *Mr. C. F. McKnight.*

For respondent there was a brief and an oral argument by *Mr. John G. Mullen.*

McBRIDE, C. J.—The common law is the rule by which we must test the respective rights of the parties to the present litigation. But for the willful stubbornness of plaintiff's husband and the defendant, the attorneys for the respective parties could have settled this dispute without resort to the courts, and at a tithe of the expense that the parties have incurred here. They laudably counseled this course, but the litigants seemed disposed to stand upon their technical legal rights, and we are now compelled to settle here a small dispute which should have been adjusted in a neighborly manner without resort to the law.

1, 2. If this stream is a watercourse within the meaning of the common law, defendant had no right to obstruct it without providing some equally convenient method by which plaintiff's land could be drained of its surplus water. While the stream in question is small and the amount of water flowing through it is comparatively insignificant, we think that it has the dignity of a watercourse as distinguished from the flow of mere surface water which is confined to no well-defined channel.

"A watercourse consists of bed, banks, and water; yet the water need not flow continually; and there are many watercourses which are sometimes dry. There is, however, a distinction to be taken in law between a regular, flowing stream of water, which at certain seasons is dried up, and those occasional bursts of water, which, in times of freshet, or melting of ice and snow, descend from the hills and inundate the country. To maintain the right to a watercourse or brook, it must be made to appear that the water usually flows in a certain direction, and by a regular channel, with banks or sides. It need not be shown to flow continually, as stated above, and it may at times be dry; but it must have a well-defined and substantial existence": Angell on Watercourses (6 ed.), § 4.

In *Earle* v. *De Hart,* 12 N. J. Eq. 283 (72 Am. Dec. 395), it is said:

"A watercourse is defined to be a 'channel or canal for the conveyance of water, particularly in draining lands.' It may be natural, as where it is made by the natural flow of the water, caused by the general superficies of the surrounding land from which the water is collected into one channel, or it may be artificial, as in case of a ditch, or other artificial means, used to divert the water from its natural channel, or to carry it from low lands, from which it will not flow, in consequence of the natural formation of the

98 Or.—10

surface of the surrounding land. It is an ancient watercourse, if the channel through which it naturally runs has existed from time immemorial. Whether it is entitled to be called an ancient watercourse, and, as such, legal rights can be acquired and lost in it, does not depend upon the quantity of water it discharges. Many ancient streams of water which, if dammed up, would inundate a large region of country, are dry for a great portion of the year. If the face of the country is such that it necessarily collects in one body so large a quantity of water, after heavy rains and the melting of large bodies of snow, as to require an outlet to some common reservoir, and if such water is regularly discharged through a well-defined channel, which the force of the water has made for itself, and which is the accustomed channel through which it flows, and has flowed from time immemorial, such channel is an ancient natural watercourse.''

The stream here in question has all these qualities. It has existed from time immemorial. Witnesses testify that it was in existence more than thirty years ago. It was made by the flow of water arising from seepage from the hills or collected in one channel by the general slope of the surrounding country. It has well-defined banks through which water is accustomed to flow, and it serves the useful purpose of carrying away water that would otherwise accumulate upon the lands of plaintiff. Although its flow is not continuous, it appears to be fairly regular, and not the offspring of sudden and unusual freshets.

3. Without discussing at length the authorities which the learning and industry of counsel have presented, we think that plaintiff has fully established her right to the use of this stream or its equivalent for the purpose of drainage. It does not follow, however, from this position, that plaintiff has the right to prescribe the method by which defend-

ant must control the water flowing from plaintiff's land to his own. Plaintiff's rights are negative to the extent that all she can claim is that defendant shall not so use the water when it reaches his land or so arrest its flow as to cause it to turn back upon her premises. That defendant can avoid this at very small expense to himself is shown by the testimony of Mr. Cathcart, and, indeed, by his own, by constructing a ditch along the boundary line between himself and plaintiff, and thence to the slough, as indicated in Mr. Cathcart's testimony on cross-examination. He should be permitted to do this but at his own cost, as an alternative to removing the fill that he has placed in the old channel.

4. It is urged on defendant's behalf that to cause him to open up the old channel would result in his losing about four acres of improved land worth $800, while the land of the plaintiff is unproductive and her injury comparatively trivial. Although the courts in some instances will weigh the comparative injury to the respective parties, in determining whether or not an injunction must issue, yet we are not inclined to apply this rule in the case of a continuing trespass. It is true that the injury caused so far is not great, but it is shown that plaintiff had only recently become the owner of her tract, and that she intended to improve it, but is prevented by conditions arising out of defendant's obstruction of her means of draining it. It is plain that the remedy by successive actions for nuisance would be inadequate in this case. And it is also manifest that defendant could have avoided the necessity of removing the fill which he has placed in the old channel, by digging a few feet of ditch on his own land and permitting plaintiff to use it,

instead of haggling about "royalty" for its use after the first year.

The decree of the court will be modified by permitting defendant to retain the fill he has placed in the old channel, on the condition that he construct a ditch northerly along the line between himself and plaintiff, and ,thence as indicated by Mr. Cathcart's testimony, adequate to carry off the water passing through the old channel from plaintiff's premises, this to be done within four months from ·the date of the mandate; and, in default of compliance with this order, the defendant will be required to remove completely the obstruction in the old channel, as provided in the original decree, and plaintiff shall have leave to apply to the Circuit Court at the foot of the decree herein for such order as may be necessary to compel compliance with our order. The decree as to costs and disbursements in the Circuit Court will be affirmed, and neither party will recover costs in this court.                                        MODIFIED.

BENSON, BURNETT and HARRIS, JJ., concur.