SISTERS OF ST. JOSEPH CORPORATION *vs.* ATLAS SAND, GRAVEL & STONE COMPANY ET AL.

MALTBIE, C. J., HAINES, HINMAN, AVERY and FOSTER, Js.

Argued May 9th—decided June 27th, 1935.

*Louis Y. Gaberman,* with whom was *Glen W. Fox,* for the appellants (defendants).

*Millard Bartels,* with whom was *Allen E. Brosmith,* and, on the brief, *Warren Maxwell,* for the appellee (plaintiff).

HINMAN, J. The essential facts as alleged in the complaint amplified by the finding may be summarized as follows: The plaintiff owns real property located in West Hartford west of Prospect Avenue and the defendants own parcels located east of that avenue. A brook runs in an easterly direction across the land of the plaintiff in an open channel, under Prospect Avenue through a culvert erected by the town, and formerly ran thence across the land of the defendant the Chapel Company, and then across the land of the named defendant. The Atlas Company acquired its land in 1913 or 1914, commenced to fill it in, raising the elevation three to six feet, and eventually filled in to the edge of the brook bed. Refuse and foreign matter dumped into the brook from Prospect Avenue created a nuisance and in 1922 the Atlas Company laid about two hundred feet of thirty-inch corrugated pipe in the brook bed in its land, near its office building, in order to obviate this nuisance, and the brook bed adjacent to this pipe was filled in. The Chapel Company acquired its land in 1923 and gradually filled it in up to within a few feet of the edge of the brook, raising the elevation several feet. In 1926 the Atlas Company laid another two hundred feet of thirty-inch pipe in the brook bed and in 1929 the Chapel Company laid a further section of pipe about two hundred feet long in the brook bed on its land and connected it with the easterly end of the culvert under Prospect Avenue.

This culvert is arched at the top, with vertical sides

one foot nine inches high from the bottom of the culvert to the spring of the arch and the width at its bottom is sixty-eight inches. It was large enough to allow the passage of the water in the stream. The thirty-inch pipe was inserted into the east end of the culvert and sealed by concrete in approximately the middle thereof so that no water could leave the culvert except through the pipe. When the three sections of pipe had been laid they constituted one continuous line from the sealed end of the culvert through the defendants' lands at a fall of three and six-tenths inches per hundred feet, and to obtain this fall the end of the pipe at the culvert was raised one foot nine inches above the bed of the brook, thereby causing an obstruction of that height before any water enters the pipe. Previous to the laying of these pipes on the lands of the defendants, the property of the plaintiff was flooded only occasionally in the spring when the ice broke up along the stream and caused a jam in the culvert, but since the laying of the pipes and connection thereof with the culvert it has been flooded from fifteen to eighteen times a year, the principal cause being the insufficient capacity of the pipe combined with its elevation above the bottom of the culvert and insufficient slope of the pipe line. The grass in the area of the plaintiff's property now subjected to flooding was of good quality in 1929, but since then, because of repeated flooding, its present condition is swampy and unusable for any purpose, it is covered with rushes and wild grass, and has been rendered unsightly from the plaintiff's convent located on a nearby hill.

The Atlas Company has built several buildings on its land over the pipe which are substantial structures of concrete and brick on concrete foundations which go down below the pipe. From 1922 to the time of

trial, the town of West Hartford constructed several sewers in the watershed feeding the brook, all of which empty into the brook on the plaintiff's property through one forty-two inch and two twenty-four inch drains, also has laid considerable new pavement and widened old pavements in the watershed, and numerous new buildings were erected therein during that period. This increase in pavements and the laying of the storm sewers and the erection of buildings has resulted in a larger and quicker run-off of water from the watershed into the brook.

From the facts found the trial court reached the conclusions that the pipe as installed by the defendants was at no time adequate to carry the water of the brook and that its installation has thrown upon the plaintiff the whole burden of the water surplus to its damage and inconvenience, and rendered judgment ordering the Chapel Company to open up to its full size the easterly end of the culvert and both defendants to remove any obstruction to, or in the alternative to provide for, the free flow of the natural stream to the extent that it is discharged through the culvert. From this judgment the defendants appealed to this court.

Few of the numerous paragraphs of the draft-finding sought to be added to the finding state facts which are admitted or undisputed and most of the findings of fact which are attacked are not without support from evidence or legitimate inference therefrom. In applying the facts of the case to the assignments of error we have given the appellants the benefit of such corrections of the finding as they are entitled to.

The main contention of the appellants is that the facts found do not establish such results and damage from their acts in substituting the thirty-inch pipe line for the channel of the brook as it formerly existed as to entitle the plaintiff to injunctive relief. It is the

undoubted general rule that in order to lay a foundation for this remedy there must be shown an invasion of the plaintiff's rights resulting in injury which is not merely technical or inconsequential but one which is or will be attended with actual and substantial damage. *Bigelow* v. *Hartford Bridge Co.,* 14 Conn. 565, 579; *Taylor* v. *Cooke,* 113 Conn. 162, 165, 154 Atl. 349; *Balf Co.* v. *Hartford Electric Light Co.,* 106 Conn. 315, 327, 138 Atl. 122; 5 Pomeroy, Equity Jurisprudence, § 1940; 14 R. C. L. 354; 21 C. J. 157. The rule is more liberal, however, in cases of permanent or continuing nuisances where a legal right is invaded, as the interference with water rights, or the right of lateral support, or overflowing of land. 5 Pomeroy, Equity Jurisprudence, p. 4404; *Trowbridge* v. *True,* 52 Conn. 190, 199. It does not seem to be questioned, or open to question, that the present plaintiff established actual damage substantial enough to bring the case even within the general rule, but the defendants claim that the plaintiff has not established what part of this damage was caused by them as distinguished from that resulting from the increase and acceleration of the flow of surface water into the brook by the paving of streets and laying of drains by the town of West Hartford, and therefore has not proven that it has been and is being caused substantial damage by acts of these defendants.

It is true that the extent of the results of these changes in condition in increasing the quantity of water coming into the brook in times of heavy rainfall does not appear, but this is immaterial if no wrongful act of the town invading the plaintiff's rights is involved therein, and this sufficiently appears. The unquestioned finding is that "no act of the town . . . or of any other person upstream from the plaintiff has resulted in water reaching the brook from sources other

than the natural watershed that the brook has always drained." A municipality commits no wrong through the increased quantity and discharge of surface water which is the result of the grading of streets, the erection of buildings, or the paving of streets or the making of other proper public improvements which lessen the absorption of such waters by the soil, so long as the area of drainage is not added to. *Wilson* v. *Waterbury,* 73 Conn. 416, 422, 47 Atl. 687; *Bronson* v. *Wallingford,* 54 Conn. 513, 520, 9 Atl. 393; *Fox v. New Rochelle,* 240 N. Y. 109, 147 N. E. 544; *Hamilton v. Ashbrook,* 62 Ohio St. 511, 57 N. E. 239; *Miller v. Morristown,* 47 N. J. Eq. 62, 20 Atl. 61. *Sellick v. Hall,* 47 Conn. 260, 270, in which the city was held liable in part for the damage caused by an insufficient drain, is distinguishable from the present case in that it there appeared that the flow brought into the brook was in large part water, conducted in by sewers and drains from outside the natural watershed, which would not otherwise have found its way into the brook. Also the flow of surface water may be hastened and incidently increased by gutters or drains leading directly into a watercourse into which it would ultimately find its way, so long as it is not diverted from its natural course and the stream which is its natural outlet is not filled beyond its normal capacity. *Lessenger* v. *Harlan,* 184 Iowa, 172, 168 N. W. 803, 5 A. L. R. 1523, and note, p. 1530; *Wilson* v. *Waterbury,* supra; *Noonan* v. *Albany,* 79 N. Y. 470, 477; *LeBrun* v. *Richards,* 210 Cal. 308, 291 Pac. 825, 72 A. L. R. 336; *Graham* v. *Keene,* 143 Ill. 425, 430, 32 N. E. 180; 2 Farnham, Waters, p. 968. The finding affords no indication that the flow has been augmented beyond the capacity of the culvert and the natural drainage channel as it was before it was constricted by the acts

of the defendants in installing the pipe line and connecting it with the culvert.

As against lower riparian owners, upper riparian owners are entitled to have the water flow from their land to the extent it would naturally flow. And if the flow is increased by natural causes or by acts of others which constitute no legal wrong against the riparian owners upon the stream, the lower owner is not justified in doing anything to prevent the natural flow-off of the increased volume. 67 C. J. 690; *Warren* v. *Westbrook Mfg. Co.*, 86 Me. 32, 36, 29 Atl. 927. The duty of the defendants, with respect to the plaintiff, was to preserve and continue a channel which would carry off the waters, even in times of heavy rain, in an amount within the natural capacity of the brook, and the provision and maintenance, instead, of a channel insufficient thereto constitutes a nuisance. *Sellick* v. *Hall*, supra, p. 270. The facts of the instant case are not such as to render the damage to the plaintiff attributable to wrongful acts of the town and are sufficient to establish substantial damage by the acts of the defendants.

The defendants claim, further, that even if the entire damage accruing to the plaintiff be attributable to them, it is so relatively small as compared with the expense and loss to the defendants involved in a restoration of the former capacity of the stream that an injunction should be denied through the application of the doctrine of comparative injury, which is that in exercising its discretion in the issuance of an injunction the court, in a proper case, may consider and balance the injury complained of with that which will result from interference by injunction. Lewis & Spelling, Injunctions, §§ 55, 56, 295; 14 R. C. L. 357; 31 L. R. A. (N. S.) 899. We have recognized that "where . . . there has been an innocent mistake or a

176

bona fide claim of right on the part of the defendant or laches on the part of the plaintiff, or where the conduct of the defendant was not wilful and inexcusable, and where the granting of the injunction would cause damage to the defendant greatly disproportionate to the injury of which the plaintiff complains and it appears that damages will . . . compensate the latter" it may be held to be inequitable to grant a mandatory injunction and the plaintiff may be remitted to his remedy by way of damages. *Bauby* v. *Krasow,* 107 Conn. 109, 115, 139 Atl. 508. However, the facts do not so bring these defendants within the indicated scope of the doctrine that the granting of injunctive relief can be held to have been an abuse of the discretion vested in the trial court. On the finding, corrected as far as it legitimately may be, a claim of innocent mistake or bona fide claim of right on the part of the defendants would lack foundation. The facts and results suggest a failure to exercise sufficient care to ascertain if the pipe installed was of adequate capacity, comparable to lack of due care as to the location of a boundary line, as in *Kershishian* v. *Johnson,* 210 Mass. 135, 96 N. E. 56, 36 L. R. A. (N. S.) 402. There was not the laches of the plaintiff or the inappreciable injury present in *Bauby* v. *Krasow,* supra, nor are there such considerations of public interest as have sometimes been held to justify denial of an injunction, as in *New Haven Water Co.* v. *Wallingford,* 72 Conn. 293, 305, 44 Atl. 235.

The amount of damages is not necessarily decisive where a right is materially interfered with by a nuisance caused by wrongful use by another of his property, if the injury is of a continuing nature involving a recurrent grievance and a multiplicity of suits to secure redress, as in the case of invasion of a right to have water flow in its accustomed channel and quan-

tity. *Burlington* v. *Schwarzman,* 52 Conn. 181, 184; *Rutkoski* v. *Zalaski,* 90 Conn. 108, 114, 96 Atl. 365; *Lawton* v. *Herrick,* 83 Conn. 417, 425, 76 Atl. 986; *Hansen* v. *Crouch,* 98 Ore. 141, 193 Pac. 454; 5 Pomeroy, Equity Jurisprudence, p. 4486; 31 L. R. A. (N. S.) 900. In such a case equity intervenes on account of the nature of the injury done rather than of the magnitude of the damage. *Robertson* v. *Lewie,* 77 Conn. 345, 59 Atl. 409; *Trowbridge* v. *True,* 52 Conn. 190, 199; 5 Pomeroy, Equity Jurisprudence, p. 4486; 31 L. R. A. (N. S.) 900. *Bauby* v. *Krasow,* supra, is again distinguishable in that there an adequate remedy could be afforded by a single award of damages for all time, susceptible of present proof. Also, it is not alone tangible physical injury and damage which equity regards; so far as one's enjoyment of his land is affected, "it is a destruction, if not physical, yet at least in the character in which it has been held and enjoyed, of what is generally regarded in equity as property so peculiar as not properly to be made a subject of compensation." 5 Pomeroy, Equity Jurisprudence, p. 4373; *Campbell* v. *Seaman,* 63 N. Y. 568. Therefore, even if we were to add to the finding the defendants' draft-findings as to the value of flooded land and its annual rental value, and the claimed cost of an additional pipe necessary to adequately carry the water passing through the culvert, we could not hold the doctrine of comparative damage so clearly applicable as to render erroneous the trial court's exercise of discretion in granting the injunction.

There is no error.

In this opinion the other judges concurred.