Argued September 14; affirmed October 24; rehearing denied
December 12, 1939

BUTLER ET AL. *v.* MAAS ET AL.

(94 P. (2d) 1116)

202

Department 2.

*Bennett Swanton,* of Marshfield (Liljeqvist, Swanton & McKeown and Joseph McKeown, all of Marshfield, on the brief), for appellants.

*Claud H. Giles,* of Marshfield (Dal M. King, of Myrtle Point, on the brief), for respondents.

LUSK, J. The boundary line between the properties of the plaintiffs and defendants runs north and south, the northern end being at the Coquille river. The dam complained of is located at a point on the line some 2,000 feet south of the river. Plaintiffs' land in that vicinity is variously described as bottom land, marsh, or swamp. From December until June a considerable portion of it is covered with water that comes through well-defined water courses from the hills to the south and also, at times, from the overflow of the Coquille river. The Butler land at the boundary is somewhat higher than the Maas land which, for a distance of 500 feet or more, slopes away gradually to the west. Thus, the natural drainage is from the Butler to the Maas land. On either side of the boundary at the location of the so-called dam there is a natural depression which most of the witnesses described as a swale. It would be inaccurate to call it a ditch. It has no well-defined banks and is from four to six feet in width. It continues westerly through the Maas property, a distance of approximately 150 feet, and the drainage from the Butler property passes through it toward the river.

The Maas land at this location is likewise bottom or swamp land. Formerly, the only means of draining

the defendants' land—and that would mean taking off the water which accumulated on both properties—was a natural drainage ditch some four feet in depth, the entrance to which is near the east line of the Maas place and some 1200 or 1300 feet from the boundary line. This natural ditch winds in a northeasterly direction until it empties into the river. It is not, however, effective for drainage purposes at stages of low water because, its entrance being higher than the bottom lands to the east, and the fall toward the river not being sufficiently great, the water would back up from the natural ditch and onto the swamp lands. As a result, there were times when water remained in the deepest part of the marsh on both places far into the summer. In order to remedy this condition, in 1919, the then owners of the Maas property built a blind ditch, the upper end of which is located approximately half way between the boundary line and the natural ditch and some 600 to 700 feet in a straight line northwesterly from the dam. According to the testimony the blind ditch has accomplished the purpose for which it was built of draining the waters for the benefit of both properties. It cost about $1,000 to build. The plaintiff, Mr. C. H. Butler, was requested to contribute toward the cost, but declined.

■ The plaintiffs claim in their testimony that their natural right of drainage was first interfered with in 1932 and 1933 when the defendants obstructed the depression across their land, through which the water had flowed, by plowing their field near the boundary line in such a manner as to fill in the depression or "ditch", as the plaintiff, C. H. Butler, chose to call it. It was asserted that formerly, in plowing this field, a triangular piece about three acres in size, "they

plowed a dead furrow to carry the water off in place of the ditch'', but that the defendants plowed in such a manner as to fill up the ditch and to hold back the water on the plaintiffs' land. The testimony on this issue is highly contradictory, as well as somewhat obscure to one not versed in the mysteries of plowing, and the question might well be resolved by refusing to overturn the finding of the circuit judge, who not only saw the witnesses and heard them testify but who also viewed the premises and was therefore in a much better position than this court to determine where the truth of the matter lies. But, aside from that, the principle governing the rights and duties of the parties is thus stated by Mr. Justice McBride in *Hansen v. Crouch*, 98 Or. 141, 146, 193 P. 454:

"Without discussing at length the authorities which the learning and industry of counsel have presented, we think that plaintiff has fully established her right to the use of this stream or its equivalent for the purpose of drainage. It does not follow, however, from this position, that plaintiff has the right to prescribe the method by which defendant must control the water flowing from plaintiff's land to his own. Plaintiff's rights are negative to the extent that all she can claim is that defendant shall not so use the water when it reaches his land or so arrest its flow as to cause it to turn back upon her premises."

Now, in the present case, the overwhelming weight of the evidence, coming not only from witnesses for the defendants but also from some witnesses for the plaintiffs, establishes that, since the building of the blind ditch by defendants' predecessors in interests, the drainage from the Butler land has been better than it had ever been before. Hence, the question of the manner in which the defendants plowed their field becomes immaterial.

■ Some time during the year 1935 the plaintiff, C. H. Butler, apparently to redress the grievance which he conceived he had suffered as the result of the defendants' method of plowing, went upon the defendants' land with another and proceeded to dig a ditch extending a distance of about ten or fifteen feet west from the line fence, and estimated by the defendant, H. R. Maas, to have been about two and a half feet wide and half a foot deep. The defendant, H. R. Maas, saw them and protested, but without avail. Thereafter the defendant, George A. Mass, improvised the so-called dam by means of boards nailed to an ash pole placed in the ground near the boundary line, and partially filled the ditch with dirt. The ash pole and the boards have since been removed, but the plaintiffs claim that the work done by Maas has raised the level of the ground at the dam and is an obstruction to the free drainage of their water. On this issue the circuit court found against the plaintiffs, and we think rightly so. The clear preponderance of the testimony is with the defendants. The plaintiff, C. H. Butler, admitted that at the present time the dam is lower than the general level of the ground, and there is no convincing testimony in the record supporting the claim that it at any time interfered with the natural drainage from plaintiffs' property. The only purpose the defendants seem to have had in building the dam was to keep intact the fill which they made in the ditch dug by the plaintiffs on their land.

■ We are brought, then, to the claim of the plaintiffs resting on the reservation in the deed of the Lairds to defendants' predecessors in interest. The clause reads: "We reserve the right to keep a ditch open through the property". It may be assumed that, if

nothing has since occurred to alter the legal status of the parties, whatever rights were reserved by this clause of the deed have passed to the plaintiffs, and whatever burdens were thereby created must be borne by the defendants. 19 C. J., Easements, 910, § 98. We think, however, that the plaintiffs are barred by the decree in the suit to quiet title brought by the predecessors in interest of the defendants from claiming anything under this reservation. In that suit the complaint alleged that the defendants, of whom the plaintiff, C. H. Butler, was one, "claim some right, title, lien or interest in the real estate hereinbefore described adverse to these plaintiffs and that the said defendants and each of them are without any right, title, estate, lien or interest whatever in the premises." C. H. Butler was duly and regularly served with process in that suit. He did not appear, but permitted decree to go against him by default. A portion of the decree entered October 30, 1919, reads: "It is hereby decreed that said defendants have no right, title, estate, lien or interest in the said premises, nor any portion thereof and that the said defendants be and they hereby are forever barred from asserting claim to the said premises unless the same are acquired after this date."

■ If the reservation created any benefit, that benefit was a "right" or "interest" in the defendants' land. The complaint directly averred that the plaintiff, C. H. Butler, claimed a right or interest therein but had none, and the decree, in unambiguous language, so declared. Hence, the case falls within the doctrine announced in *White v. Ladd*, 41 Or. 324, 332, 68 P. 739, 93 Am. St. Rep. 732:

"The potency of a judgment as an estoppel concludes every fact necessary to uphold it, and extends,

not only to matters actually determined, but to every other matter which the parties might have litigated and have had decided as incident to and essentially connected with the subject-matter of the litigation, and every matter coming within the legitimate purview of the original action, both in respect to the matters of claim and defense, and a default judgment, or one confessed, is attended with the same legal consequences, as there exist no tenable grounds of distinction between a title confessed and one tried and determined''.

See *Runnells v. Leffel*, 105 Or. 346, 207 P. 867, and cases there cited. Also 51 C. J., Quieting Title, 283, § 280.

■■ An attempt was made at the trial to show the purpose for which the suit to quiet title was instituted, and from that to draw the conclusion that the question of the right to maintain a ditch on defendants' land was not in issue or adjudicated. The trial court properly ruled that this evidence was inadmissible. Evidence of the purpose for which a suit is brought sheds no light on the issues actually made and determined. And, while in the case of ambiguity or uncertainty parol evidence is sometimes received for the purpose of ascertaining the real cause of action (34 C. J., Judgments, 506, § 803), such evidence is never admitted to contradict a clear and unambiguous decree, or to establish that certain matters were not in issue when the pleadings in the case plainly show the contrary. *Glenn v. Savage*, 14 Or. 567, 574, 13 P. 442; *Underwood v. French*, 6 Or. 66, 25 Am. Rep. 500.

From a careful examination of the record we are satisfied that the decree of the circuit court was right and should be affirmed. It is so ordered.

RAND, C. J., and BELT and BAILEY, JJ., concur.